**Vernon Lee ROSE, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 193–87.

Court of Criminal Appeals of Texas,
En Banc.

Nov. 12, 1987.

Opinion on Rehearing June 15, 1988.

John L. Fitzgerald, Kerry P. Fitzgerald, Dallas, for appellant.

Henry Wade, Former Dist. Atty. and John Vance, Dist. Atty. and John D. Nation, Randy Manasco, Patricia Poppoff Noble, Jeffrey B. Keck and Michael A. Klein, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

CLINTON, Judge.

In this cause we decide whether an instruction on the law of parole in the charge of the court to the jury given pursuant to the mandate in Article 37.07, § 4(a), V.A.C. C.P., is constitutional. The Dallas Court of Appeals sitting En Banc held the instruction is not violative of the separation of powers doctrine of Article II, § 1 in the Texas Bill of Rights or the Due Process Clause of the Fourteenth Amendment or the Due Course Clauses of Article I, §§ 13 and 19 in our Bill of Rights. *Rose v. State,* 724 S.W.2d 832 (Tex.App.—Dallas 1986). Based solely on the Constitution and laws of the State of Texas, we will find such an instruction, as well as the mandating statute, is unconstitutional.

### I.

Long before there was a Board of Pardons and Paroles the Constitution of the State of Texas vested the power of clemency solely in the Governor. See Article IV, § 11, Constitution of 1876, as originally adopted, quoted in Historical Note following; see also therein references to earlier constitutions containing similar provisions. While from time to time the Governor was aided by something called "Board of Par-

don Advisers," see Interpretive Commentary to § 11, and was taking recommendations as to parole from the Board of Prison Commissioners, exercise of that clemency power vested in the Governor was "subject to *no limitations by the Legislature* other than that mentioned in the constitutional provision with reference to the remission of fines and forfeitures and with reference to treason." *Ex parte Nelson,* 84 Tex.Cr.R. 570, 209 S.W. 148 (1919) [1] and *Ex parte Redwine,* 91 Tex.Cr.R. 83, 236 S.W. 96 (1922) (any part of parole law wherein clemency power of the chief executive under Article IV, § 11 is "in any wise abridged or infringed would be held.... unconstitutional").

It was then and still is a ground for new trial that the jury "received other testimony" during its deliberations, or engaged in "misconduct" such that defendant "has not received a fair an impartial trial." Formerly Article 40.03(7) and (8), V.A.C.C.P.; see now Tex.R.App.Pro. Rule 30(b)(7) and (8). So it was that when jurors recounted instances in the county of trial that after they were convicted and sentenced "the Governor had wrongfully interfered and used the pardoning power to shorten the terms of service of those condemned," defendant was entitled to a new trial. *Weaver v. State,* 85 Tex.Cr.R. 111, 210 S.W. 698 (1919).[2]

Reacting to a general sense developed during those times that "some governors granted pardons indiscriminately," the Legislature proposed and in 1936 the voters adopted an amendment to Article IV, § 11 to remedy the situation. Interpretive Commentary following. It created a Board of Pardons and Paroles (Board) and, *inter alia,* conditioned exercise of executive clemency with respect to commutation of

---

**1.** "It is *not within the power of the Legislature* to enlarge or restrict the pardoning power vested in the executive nor to impose conditions upon which it may be exercised, nor requirements touching the conditions precedent or subsequent which are imposed by the executive upon the convict...."
*Id.* 209 S.W., at 150. (All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.)

**2.** "The facts ... indicate that the verdict assessing the death penalty does not reflect the deliberate judgment of the members of the jury, upon the evidence legally before them, but that some of them were induced to agree to it because ... in such cases the Governor had, in the opinion of the jurors relating the extraneous facts, been overlenient in the exercise of the pardoning power." *Id.* 210 S.W., at 700.

punishment and pardons "on the written signed recommendation and advice of the Board;" with respect to remission of fines and forfeiture, "under such rules as the Legislature may prescribe," again with written recommendation and advice of the Board.

■ Under this new regime in an unbroken line of cases the Court would continue to hold, generally speaking, that when a discussion of parole by jurors "had the effect of bringing about [an] enhanced punishment," defendant was entitled to a new trial. E.g., *Price v. State*, 150 Tex. Cr.R. 161, 199 S.W.2d 168, 170–171 (1947); *Jackson v. State*, 157 Tex.Cr.R. 323, 248 S.W.2d 748 (1952). Thus a prosecutor must not invite a jury to consider the parole law in assessing punishment. *Clark v. State*, 643 S.W.2d 723, 725 (Tex.Cr.App.1982); *Marshburn v. State*, 522 S.W.2d 900 (Tex. Cr.App.1975). While decisions collected by the Court in *Heredia v. State*, 528 S.W.2d 847 (Tex.Cr.App.1975), indicate it was not particularly consistent in delineating germane factors to be evaluated in analyzing the issues, it was satisfied that "the parole law is not for the jury's consideration," *id.*, at 853.

In *Heredia v. State*, supra, the Court found that "discussion of the parole law, although common knowledge, would in every case constitute jury misconduct since *the parole law is not for the jury's consideration*," *id.*, at 853. The reason was founded in our Constitution, *viz:*

> "The decision to parole, if and when made, is beyond the province of the courts ... and therefore the jury, and is exclusively a matter within the province of the executive branch of government, under proper regulations by the legislative branch. Article IV, Section 11, Texas Constitution."

*Id.*, at 853, n. 4.[3]

To eliminate the possibility that a jury would become involved in a discussion of parole law, the Court made clear that the trial court should instruct the jury in its charge on punishment "that it should not discuss or consider the possible effects of the parole laws or system." *Moore v. State*, 535 S.W.2d 357, 358 (Tex.Cr.App. 1976). Elaborating on both *Heredia* and *Moore* in *Sanders v. State*, 580 S.W.2d 349 (Tex.Cr.App.1978), the Court further explained:

> "It would be improper for punishment to be based on an expectation that clemency powers would be exercised, and it would be unconstitutional to attempt to delay the exercise of the clemency powers or to avoid the possible granting of parole by increasing punishment in anticipation thereof. Article II, Sec. 1 of the Texas Constitution provides for the separation of governmental powers among the three distinct departments, the executive, legislative, and judicial. * * * * Clemency powers embodied in the parole system are beyond the reach of interference by the judicial branch. Art. IV, Sec. 11, Texas Const.; and *any action by the judicial branch to frustrate or delay the exercise of that power by the executive branch is as much an unconstitutional interference as is an attempted usurpation of that power.* See *Ex parte Giles* [502 S.W.2d 774 (Tex.Cr.App. 1974) ] and *Smith v. Blackwell* [500 S.W. 2d 97 (Tex.Cr.App.1973) ], for unconstitutional grants of authority to usurp clemency powers."

## II.

Now we must first determine whether constitutional principles barring jurors from considering parole laws have survived the revision of Article IV, § 11, effective when the voters approved the proposition submitted by S.J.R. No. 13 in 1983. 4 Vernon's Texas Session Law Service 1983, at A–158. As revised, § 11 reads in pertinent part:

> "Section 11. The Legislature *shall* by law establish a Board of Pardons and

---

**3.** That the Court was later to reject the *Heredia* formulation for determining whether jurors' discussing parole laws constitutes reversible error, *Sneed v. State*, 670 S.W.2d 262, 266 (Tex.Cr. App.1984), does not undermine the constitutional propositions enunciated in *Heredia* and elsewhere.

Paroles and shall require it to keep record of its actions and the reasons for its actions. The Legislature shall have authority to enact parole laws.

    \* \* \* \* \*" 4

### A.

In addressing the separation of powers issue under the Texas Constitution, the Dallas Court of Appeals gave scant attention to revised § 11. *Rose v. State,* supra, 835–837. It merely disagreed that § 11 supports appellant's contention "that parole is a component of the clemency powers vested in the executive branch of government and, therefore, these [jury] instructions constitute an usurpation by the judiciary, acting through the jury, of that executive power," because its own reading of the first paragraph "gives the legislature the power to enact parole laws" and "[t]hus the rules governing parole are within the control of the legislature." *Id.,* at 836. That reading begs the real question.

The second sentence in the first paragraph of revised § 11 is derived from former § 11 similarly providing that the Legislature "shall have authority to enact parole laws," and we find no indication that the revision is intended to provide a broader scope of legislative authority in regard to parole laws than already possessed. Therefore, contrary to the view of court of appeals, that the Legislature retains the

authority granted in 1936 to enact parole laws is of little importance. What is crucial is the role of the Board, and to that we now turn.

### B.

Clemency power is inherent in sovereignty, and may be lodged in whole or in part wherever the people determine. *Ex parte Giles,* 502 S.W.2d 774, 780 (Tex.Cr.App. 1973); *Smith v. Blackwell,* 500 S.W.2d 97, 100 (Tex.Cr.App.1973); *Ex parte Miers,* 124 Tex.Cr.R. 592, 64 S.W.2d 778, 780 (1933); *Ex parte Muncy,* 72 Tex.Cr.R. 541, 163 S.W. 29, 44 (1914); 27 Tex.Jur.3d 263–264, "Criminal Law" § 4381; 44 Tex.Jur.2d 5–6 "Pardon, Reprieve, and Commutation" § 2; Interpretive Commentary following Article IV, § 11.

In the second paragraph of § 11, as revised, the Governor retains power to grant and to revoke a conditional pardon, as well as all other clemency powers save one formerly in the Governor. The effect of revised § 11 is to remove parole eo nomine from the clemency power of the Governor and to vest that clemency power to grant and to revoke paroles in the Board. In the sense that the Governor, as chief executive, is no longer empowered to grant it, parole may not be construed to be any form of *"executive* clemency," Article 42.-18, § 2a. But parole is an act of grace. *Ex parte Lefors,* 165 Tex.Cr.R. 51, 303

---

4. The remaining paragraph is a restatement of clemency power vested in the Governor and the advisory power granted the Board by the second paragraph of former § 11, except deleted is power to revoke "paroles."

  Let us read precisely the proposition approved by the people November 8, 1983, *viz:*
"The constitutional amendment to change the Board of Pardons and Paroles from a constitutional agency to a statutory agency and *give the board the power* to revoke paroles."
S.J.R. No. 13, 4 Vernon's Texas Session Law Service 1983, at A–158–159. The constitutional command is that the Legislature shall convert the Board into a statutory agency which will continue to recommend and advise the Governor in all matters of executive clemency except paroles, leaving to the Board alone determination of paroles.

  The amendment proposed by S.J.R. No. 13 became effective upon approval by the voters November 8, 1983. The amendment retained in

the Board its constitutionally provided authority and duty to make written recommendation and advice to the Governor with respect to granting reprieves, commutations and pardons and remitting fines and forfeitures. The Legislature made no change in the character, duties and functions of the Board with respect to parole prescribed in former Article 42.12, V.A.C.C.P. In Acts 1985, 69th Leg, Ch. 427, § 2, implementing S.J.R. No. 13, codified as Article 42.18, V.A. C.C.P., the Legislature expressed its intent "to designate the Board of Pardons and Paroles as the agency of state government with *exclusive authority* to determine paroles," Article 42.18, supra, § 1. It further provided, with an exception not here implicated (an amendment to § 4, Article 42.12, V.A.C.C.P.), that "this Act is intended as a recodification only, no substantive change in law is intended, and [the Code Construction Act] applies to this Act." Acts 1985, 69th Leg, Ch. 427, p. 1555, § 4.

S.W.2d 394, 397 (1957); *United States v. Chagra*, 669 F.2d 241, 264 (CA5 1982). So long as it exists and is utilized as a tool of punishment and rehabilitation, jurisdiction, power and authority over parole must be exercised by some officer or agency of government. See and compare *Ex parte Giles*, supra, at 780 and *Smith v. Blackwell*, supra, at 101. The people have decided in favor of the Board rather than the Governor, and the Legislature has effectuated that decision in Article 42.18, V.A.C. C.P. Thus, parole is an act of clemency within the "exclusive" jurisdiction, power and authority of the Board. *Id.*, § 1.

■ The caption of S.J.R. No. 13 characterizes the Board to be established as "a statutory agency," meaning no more than it is a creature of statute. However, since in 1936 the Board was elevated to constitutional status in the Executive Department and the first sentence of the first paragraph in § 11 mandates the Legislature to establish a Board, we find that, whatever its characterization, the Board remains where it has always been—in the Executive Department. See *Texas Liquor Control Board v. Continental Distilling Sales Co.*, 199 S.W.2d 1009, 1012–1013 (Tex.Civ.App. —Dallas 1947), writ refused n.r.e., 203 S.W. 2d 288, 289, appeal dismissed, 332 U.S. 747, 68 S.Ct. 26, 92 L.Ed. 335 (1947). Moreover, the legislation implementing the constitutional foundation for the Board expressly provides that "it is subject to the Texas Sunset Act, but it is not abolished under that Act." Article 42.12, § 12a, V.A.C. C.P., see now Article 42.18, *id.* See Texas Sunset Act, Government Code, § 325.014. Compare similar treatment of Secretary of State in Article 4330a, V.A.C.S. (1987 Pocket Part).

Therefore, we conclude that since the Board of Pardons and Paroles is within and part of the Executive Department as contemplated by Article II, § 1, "the decision to grant parole, if and when made, is beyond the province of the [Judicial Department] ... and is exclusively a matter within the [Executive Department], under proper regulation by the [Legislative Department]. Article IV, Section 11." *Heredia v. State*, and *Sanders v. State*, both supra. Accordingly, "any attempt by one department of government to interfere with the powers of another is null and void." *Ex parte Giles*, supra, at 780; *State ex rel. Smith v. Blackwell*, supra, at 101.

### C.

■ The remaining question is whether the legislative mandate in Article 37.07, § 4(a), supra, that the courts "shall charge the jury in writing" the content of instruction given by the trial court in this cause, offends the separation of powers doctrine prescribed in Article II, § 1. Finding the statute is an attempt by one department of government to direct another department to interfere with powers of yet a third department of government, we hold that Article 37.07, § 4(a) is unconstitutional.

While looking at "available legislative history," the Dallas Court of Appeals said Article 37.07, § 4(a) "must be construed according to its plain meaning." *Rose v. State*, supra, at 836. We agree with the latter, and proceed to examine it and the instruction facially.[5]

■ Both the statute and the instruction begin with a direct albeit erroneous statement, *viz:*

"Under the law applicable to this case, *the defendant*, if sentenced to a term of imprisonment, may earn *time off the sentence imposed* through the award of good conduct time."[6]

---

5. The instruction is set out verbatim in the opinion of the Dallas Court at page 835. That the Dallas Court may have in part rested its decision on statute and instruction *as applied* to appellant, see *Rose v. State*, supra, at 837, is a matter we need not review here.

6. A prisoner may *not* "earn time off the sentence imposed." One may earn good time to eligibility for parole and mandatory supervision, but release on either status is subject to continuing compliance with rules and conditions of release "until the end of the term to which he was sentenced." Article 42.18, § 17; see also Article 6181–1, § 4, V.A.C.S.

In oral argument the State characterized that language as "inartful." But if we are to presume that jurors follow instructions, as the Dallas Court insisted, *Rose v. State*, supra, at 836,

The remainder of the first paragraph in both statute and instruction informs the jury generally about factors relevant to awarding good time and warranting taking it away.

The second paragraph in each adds that length of imprisonment might be reduced by an award of parole.

The third paragraph dictated by the statute reveals to the jury as "the law applicable in this case," the exact formula to determine when this appellant will become eligible for parole—"the actual time served equals one-third of the sentence imposed or 20 years, whichever is less, without consideration of any good conduct time he may earn"—and gives a simple example; it points out that eligibility is no guarantee of parole.

The jury is next informed that one cannot accurately predict "how the parole law and good conduct time might be applied to this defendant," because that depends on decisions made by "prison and *parole* authorities."

At this point, however, in the fifth paragraph of both the jury is instructed: "You *may consider* the existence of the parole law and good conduct time." That is to say, when it comes to assess punishment the jury may deliberate on the content of what has been stated in the preceding four paragraphs in making a decision as to the number of years it will assess as punishment.[7]

"The evil to be avoided is the consideration by the jury of parole in assessing punishment." *Clark v. State,* 643 S.W.2d 723, 725 (Tex.Cr.App.1982). Rather than avoid that evil the instruction mandated by the statute directly instructs the jury that in assessing punishment it may consider

aspects of parole law contained in the instruction.

It is of no constitutional consequence that thereafter excluded from consideration are "the extent to which good conduct time may be awarded and forfeited by this particular defendant" and "the manner in which the parole law may be applied to this particular defendant" by the authorities. Jurors have already been instructed that *they* may consider the stated explanation of parole law and good conduct time, yet the Court has consistently held the parole law is not for the jury's consideration. See *ante,* at 2–4.

The legislative mandate in Article 37.07, § 4(a), supra, is an attempt by the Legislative Department to direct the Judicial Department to interfere with exercise of powers of the Board of Pardons in the Executive Department and, as such it offends the separation of powers doctrine in Article II, § 1. Accordingly we hold that Article 37.-07, § 4(a) and the instruction required by it are unconstitutional.

### III.

Appellant also contends that the instruction mandated by Article 37.07, § 4(a), supra, is violative of his rights to due course of law guaranteed by Article I, §§ 13 and 19 and Article 1.04, V.A.C.C.P. That is, he is being denied that fundamental fairness necessary to due administration of justice, *Webb v. State,* 161 Tex.Cr.R. 442, 278 S.W. 2d 158, 160 (1955), in that in operation and effect the statute, as well as the instruction, preclude a fair and impartial trial on the issue of punishment.

Elsewhere, at time of trial in this cause, Article 37.07 contemplated that an assessment of punishment be based on evidence "as to the prior criminal record of the de-

then we must attribute to this jury an awareness at the outset that term of sentence imposed on appellant in accordance with number of years of punishment assessed by the jury in its verdict would be lessened by an award of good conduct time. Thus the jury begins its deliberations on punishment with an erroneous and misleading notion in mind.

7. To consider is synonymous with study, contemplate and weigh; their shared meaning ele-

ment is "to apply one's mind to something in order to increase one's knowledge or understanding of it or to reach a decision about it." Webster's New Collegiate Dictionary (1979) 239. When functioning in a formal body, we "consider and deliberate with a view to action." Funk & Wagnalls Standard Handbook of Synonyms, Antonyms & Prepositions (Revised Edition 1947) 148–149.

fendant, his general reputation and his character," *id.* § 3(a); to that *Allaben v. State*, 418 S.W.2d 517 (Tex.Cr.App.1967), added "[e]vidence legally admissible to mitigate punishment or evidence that is relevant to the application for probation, if any, is also admissible." *Id.*, at 519.[8] Of course, the instruction given here is not evidence; in terms it purports to be "the law applicable to this case," rather than to the facts of the case.

■ Early on "due course of the law of the land" was held to mean "the general law; a law which hears before it condemns, which proceeds upon inquiry and renders judgment only after trial." *Huntsman v. State*, 12 Tex.App. 619 (1882). See also *Bumguardner v. State*, 147 Tex.Cr.R. 188, 179 S.W.2d 768, 770 (Tex.Cr.App.1944). Put in more contemporaneous terms, an essential ingredient of a fair and impartial adversarial proceeding, including a hearing on punishment, is that the ultimate conclusion of the factfinder be a determination of issues tendered by pleadings giving adequate notice, raised by evidence properly admitted, upon an opportunity for defendant to confront adverse witnesses and be heard by an impartial factfinder under fair procedures provided by law, including some showing of the basis for that conclusion. *Thompson v. State*, 626 S.W.2d 750 (Tex. Cr.App.1981); *Caddell v. State*, 605 S.W.2d 275 (Tex.Cr.App.1980); *Ex parte Guzman*, 589 S.W.2d 461 (Tex.Cr.App.1979); *Ex parte Quintanilla*, 151 Tex.Cr.R. 328, 207 S.W.2d 377 (1947); 12 Tex.Jur.3d 735, "Constitutional Law," § 157.

■ Thus when a jury is factfinder its verdict will be reflected in the judgment of the trial court, and the judgment must be entered of record. Article 42.01, V.A.C.C. P. A verdict on punishment, like a verdict on guilt, is general in the sense that it states an amount of punishment assessed pursuant to Article 37.07, §§ 1(a) and 3(b)

and (c). It is now the rule that jurors may not testify to any matter or statement occurring during the course of deliberations or to the effect of anything upon their minds or emotions influencing them or concerning their mental processes. Tex.R.Cr. Evid. Rule 606(b). To gain any insight into the basis and rationale of a verdict one must resort to evidence admitted, the charge on punishment, argument of the parties and other relevant indicia of record, if any.

■ Jurors are instructed they "may consider the existence of parole law and good conduct time," and experience teaches the likelihood they will is great. A general adverse reaction to gubernatorial extravagance in exercising powers to pardon and commute is a documented historical fact, and motivated the people to impose restrictions on its use. See *ante*, at 531–32. More recently trial records and our own opinions reflect that often jurors cannot resist the temptation to discuss parole laws. Indeed, the Bill Analysis reports what is commonly known—jurors were considering operation of parole laws in revulsion against their understanding of how they are being administered. *Rose v. State*, supra, at 836.

The issue of punishment should be decided on relevant evidence of record prescribed by Article 37.07, § 3(a) under such additional instructions as may be necessary pursuant to *id.*, § 3(c). "It would be improper for punishment to be based on an expectation that clemency powers would be exercised, and it would be unconstitutional to attempt to delay the exercise of the clemency powers or to avoid the possible granting of parole by increasing punishment in anticipation thereof." *Sanders v. State*, supra, at 351.

So long as provided by law, motion in arrest of judgment, motion for new trial and pursuit of appeal are valuable means

---

**8.** Amended effective September 1, 1986, Article 37.07, § 3(a), now reads in pertinent part that "evidence may, as permitted by the Rules of Evidence, be offered [et cetera]." That intro-

duction of rules of evidence into the punishment hearing does not affect our rationale or the result we reach here.

of remedying violations of greater rights vouchsafed by due course of law. However, an instruction mandated by Article 37.07, § 4(a), is virtually immune from challenge because the instruction purports to be one of law, evidence relevant to its declarations is not admissible, and counsel are prohibited from arguing the matter to the jury. Whether jurors actually did discuss and consider parole law and good conduct time, and to what extent and effect, can never be properly discovered and adequately determined. The risk that punishment will be based on extraneous considerations is intolerable in a society that constitutionally demands concepts of fundamental fairness be honored in its criminal justice system. *McFarlane v. State,* 158 Tex. Cr.R. 194, 254 S.W.2d 136 (1953); see *State ex rel. Bryan v. McDonald,* 662 S.W.2d 5, at 7–8 (Tex.Cr.App.1983); *Webb v. State,* 161 Tex.Cr.R. 442, 278 S.W.2d 158 (1955) (On Motion for Rehearing, at 160); see also *State v. Olsen,* 360 S.W.2d 398, at 401 (Tex.1962), excerpting *Ramirez v. State,* 92 Tex.Cr.R. 38, 241 S.W. 1020, at 1021 (1922). Without interweaving federal law, we observe that it does not appear to be inconsistent: e.g., *Gardner v. Florida,* 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977); see also *Presnell v. Georgia,* 439 U.S. 14, 99 S.Ct. 235, 58 L.Ed.2d 207 (1978), and *Cole v. State of Arkansas,* 333 U.S. 196, 68 S.Ct. 514, 92 L.Ed. 644 (1948); cf. *Andrade v. State,* 700 S.W.2d 585 (Tex.Cr.App.1985) (Concurring Opinion, at 590–591). Therefore, we hold that Article 37.07, § 4(a), along with the instruction it mandates, violates Article I, §§ 13 and 19.

## CONCLUSION

Having held the statute and the instruction it requires unconstitutional in two respects, now we should determine whether beyond a reasonable doubt the instruction made no contribution to punishment assessed by the jury. Tex.R.App.Pro. Rule 81(b)(2).[9] However, a majority of the Court views that matter differently.[10]

Accordingly the judgment of the Dallas Court of Appeals is affirmed.

DUNCAN, J., joins Part III.

MILLER, Judge, concurring on appellant's petition for discretionary review

To appreciate the problem of the parole charge, we must start with a common premise. That premise is that it is improper for a jury to give a greater sentence than they believe is merited for the sole purpose of having the defendant serve *all* of the sentence *they do* believe is merited. That is, a jury believing that a sentence of ten years is the proper punishment in a given case, should not give a defendant twenty years so that he will not be paroled until he actually serves the ten. As far as I can tell, all members of the Court agree to this premise.

Obviously this Court starts to part ways once we leave the above premise and venture into the parole charge mandated by Art. 37.07, § 4, V.A.C.C.P. Some members

9. A harm analysis under *Almanza v. State,* 686 S.W.2d 157 (Tex.Cr.App. 1985), is inappropriate here. The trial court gave an instruction mandated by statute; thus it does not appear from the record that any requirement of Article 36.14 through Article 36.18 "has been disregarded," as contemplated by Article 36.19, V.A.C.C.P.

10. Because the trial court gave the invalid instruction in accordance with requirements of a facially unconstitutional statute, the writer is of the view that appellant suffered sufficient harm from the denial of due course of law explicated in Part III of this opinion. We are satisfied that in telling the jury it could consider the parole law and good conduct time the infirm instruction fatally infected the entire punishment hearing. Compare *Ex parte Coleman,* 599 S.W.2d 305 (Tex.Cr.App.1978). The concurring opinions, however, do make a harm analysis under *Almanza v. State,* 686 S.W.2d 157 (Tex.Cr.App. 1985), and say none is sufficient to find that appellant has not had a fair and impartial hearing on punishment. Judge McCormick and those who join him in dissent would not hold the statute and the instruction it mandates unconstitutional. The consequence is that while a majority finds error in giving the instruction, it also holds the error does not call for a reversal.

of this Court find no constitutional problem with the article or the giving of the charge. See Judge McCormick's dissent. Others find both a separation of powers and a due course of law infringement. A majority at least agrees that the article violates the separation of powers doctrine of the Texas Constitution.

I agree that Article 37.07, § 4(a), supra, violates Art. II, Sec. 1 of the Texas Constitution (separation of powers). I write having the benefit of the comments in Judge McCormick's dissenting opinion. For reasons that escape me, neither the majority opinion nor the dissent mentions what must be the most important separation of powers opinion in recent times, *Meshell v. State,* 739 S.W.2d 246 (Tex.Cr.App.1987, motion for rehearing overruled November 4, 1987). Much of what was written in *Meshell,* supra, answers the acerbic comments of the dissent on this ground.[1] The very reasoning that led to a finding of a legislative encroachment into an area of power exclusively reserved for the prosecuting attorney in the judicial department, that of discretion in preparing for trial, bolsters the majority's reasoned view that the legislature has here encroached, via a directive to the judiciary, upon an area of power exclusively reserved for the Board of Pardons in the executive department.

My concern goes to the treatment of the harm resulting from the jury instruction mandated by this unconstitutional statute. In the two short years since the advent of the understanding of error in jury instructions elucidated in *Almanza v. State,* 686 S.W.2d 157 (Tex.Cr.App.1985) (opinion on rehearing), over three hundred reported cases have used the two-tiered analysis in jury charge error. Once the giving of a portion of the trial court's jury charge is determined to be error, we must apply an *Almanza* analysis. That analysis results in finding either that the giving of an unobjected-to charge amounted to egregious error which deprived the defendant of a fair and impartial trial, or that the giving of an objected-to charge amounted to harm that injured the rights of the defendant.

In this case there was no objection to the giving of the charge in question. In addressing such a situation, we stated in *Almanza,* supra:

> "We hold that finding error in the court's charge to the jury begins—not ends—the inquiry; the next step is to make an evidentiary review ... which may illuminate the actual, not just theoretical, harm to the accused." *Almanza,* supra, at 174.

Here, a majority of the Court has decided that the giving of the charge is the error that resulted from the dictates of a statute violating the separation of powers doctrine. That the pronounced error here is in the charge to the jury is beyond refute. Thus I would proceed with the harm analysis described in *Almanza,* supra.

The first post-*Almanza* case from this Court to find unobjected-to reversible error in a court's charge on punishment was *Ellis v. State,* 723 S.W.2d 671 (Tex.Cr.App. 1986). Upon viewing the error in light of the entire record, we analyzed the charge in view of the evidence admitted, the jury arguments, the length of the jury's sentence, and concluded that the defendant was denied a fair trial. A similar approach may be taken in the instant case.

According to the Court of Appeals' opinion, the facts of the case are as follow:

> "... on the afternoon of October 17, 1984, appellant and two other men entered complainant's textile company in Dallas, robbed him at gunpoint, and left

---

1. Referring to dissenter's comments such as "The fact that opinions may differ as to the constitutionality of a statute should not be a sufficient basis to strike down the legislation. Instead, it should militate in favor of constitutionality unless it is so apparent that reasonable minds could not differ." (Dissenting opinion p. 543) (*Meshell,* supra, being a hotly contested 5–4 decision); and "The majority implies that since the constitutional authority for the Board of Pardons and Paroles remains in Art. IV, TEX. CONST., the agency is therefore an executive agency." (Dissenting opinion, p. 544) (*Meshell,* supra, stating that by establishing the office of county attorney under Article V, the authors of the Texas Constitution placed those officers within the judicial branch of government).

him tied up on the floor. Appellant took complainant's pistol and approximately $160 in cash. Shortly before noon, eight days later, Officer Reno was at an apartment complex in Ennis when he saw a goldish-yellow Pontiac Sunbird that the police were seeking. He observed appellant and his companion, George Fitch, Jr., get out of the car and walk toward the apartments. He approached the two men and asked them to show their identification. As Reno began his questioning, Officer Shoquist arrived and discovered that appellant had a concealed handgun later identified as the pistol stolen in the Dallas robbery. Reno then drew his revolver on Fitch, removed a pistol Fitch was carrying in the waistband of his trousers, and placed Fitch on the ground without handcuffs. Reno then turned to aid Shoquist who was struggling with appellant for the latter's pistol. As appellant and the two officers struggled, Reno lost possession of Fitch's pistol, and Fitch recovered it. Fitch shot and wounded Reno. During the ensuing confusion, appellant escaped in a squad car; he was caught after a high speed chase, which ended when appellant crashed into a concrete median marker."

*Rose v. State*, 724 S.W.2d 832, 833–4 (Tex. App.—Dallas 1987). During the penalty stage of trial, the State established that the 39–year–old appellant had been to penal institutions three times and had five prior felony convictions.

During final argument, while both prosecutors mentioned that appellant was back in Dallas twelve years after receiving a twenty-five year sentence (as reflected by the admitted evidence of prior convictions), neither gave further attention to that fact nor mentioned parole at all in their arguments. Both asked for a life sentence because of the facts of the case and appellant's five prior felony convictions.

Based on this examination of the record, I am totally unable to say that the giving of this unobjected-to charge amounted to egregious error that deprived appellant of a fair and impartial trial. Thus reversible error is not presented.

Moreover, even if this harm analysis did not reach the above result, the following charge, further mitigating harm, was given to the jury after the parole law charge in question:

"You are further instructed that in determining the punishment in this case, you are not to discuss among yourselves how long the defendant will be required to serve any sentence you decide to impose. Such matters come within the exclusive jurisdiction of the Board of Pardons and Paroles and the Governor of the State of Texas and are no concern of yours."

No reversible error is presented.

CAMPBELL, J. joins.

ONION, Presiding Judge, concurring in part and dissenting in part on appellant's petition for discretionary review.

Appellant was convicted of aggravated robbery and his punishment was assessed by the jury at life imprisonment.

Appellant complained on appeal, inter alia, that charging the jury on the law of parole pursuant to Article 37.07, § 4(a), V.A.C.C.P., violated the separation of powers doctrine and due process clauses of the federal and state constitutions. The Dallas Court of Appeals rejected such contentions and affirmed the conviction. *Rose v. State*, 724 S.W.2d 832 (Tex.App.–Dallas 1986). We granted the appellant's petition for discretionary review to determine the correctness of the decision of the Court of Appeals.

In view of appellant's challenge to the constitutionality of Article 37.07, § 4(a), supra, the statute is vested with a presumption of validity and this Court is duty bound to construe such statute in such a way as to uphold its constitutionality if possible. See *Ely v. State*, 582 S.W.2d 416, 419 (Tex.Cr.App.1979); *Ex parte Granviel*, 561 S.W.2d 503 (Tex.Cr.App.1978); V.T.C.A., Government Code, § 311.021. See also *Faulk v. State*, 608 S.W.2d 625, 630 (Tex.Cr.App.1980). Courts should not declare an act unconstitutional unless it is clearly made to appear in its enactment that the Legislature has exceeded its pow-

ers. *Lyle v. State*, 80 Tex.Cr.R. 606, 193 S.W. 680 (1917). And courts should not assume the Legislature would intend an unreasonable result if the statute is capable of a construction that would prevent such a result. *Wade v. State*, 572 S.W.2d 533, 535 (Tex.Cr.App.1978). Before a statute is set aside, its validity must clearly be unsupported by a reasonable intendment or allowable presumption. *Ex parte Groves*, 571 S.W.2d 888 (Tex.Cr.App.1978); *Parr v. State*, 575 S.W.2d 522 (Tex.Cr.App.1978).

With these principles as a background, I fully agree that Article 37.07, § 4(a), supra, is unconstitutional on the bases set forth in the majority opinion. Here the trial judge following the mandatory language of the statute, now declared unconstitutional, gave the jury instruction now in question. The error was error in the court's charge although there was no objection to the court's charge on this basis. The error then must be analyzed in light of *Almanza v. State*, 686 S.W.2d 157 (Tex.Cr.App.1984), where it was stated at p. 171:

"After researching Texas statutory and decisional law from 1857 forward, we have concluded that Article 36.19 actually separately contains the standards for *both* fundamental error and ordinary reversible error. If the error in the charge was the subject of a timely objection in the trial court, then reversal is required if the error is 'calculated to injure the rights of defendant,' which means no more than that there must be *some* harm to the accused from the error. In other words, an error which has been properly preserved by objection will call for reversal as long as the error is not harmless.

"On the other hand, if no proper objection was made at trial and the accused must claim that the error was 'fundamental,' he will obtain a reversal only if the error is so egregious and created such harm that he 'has not had a fair and impartial trial'—in short 'egregious harm.'

"In both situations *the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence,* including the contested issues and weight of probative evidence, *the argument of counsel and any other relevant information revealed by the record of the trial as a whole.*" (Emphasis supplied.)

Since there was no objection to the charge, reversal is proper only if the fundamental error is so egregious and creates such harm that the appellant "has not had a fair and impartial trial." In applying the *Almanza* analysis each case must stand on its own merits.

The error is in the court's charge at the penalty stage of the trial only. The sufficiency of the evidence to sustain the aggravated robbery conviction is not disputed. Appellant and two companions entered the textile company of the victim, robbed him at gunpoint and left him tied up on the floor after threatening to kill him. Approximately $160 in cash and the victim's pistol were taken. Eight days later Lt. Dennis Reno of the Ennis Police observed a goldish yellow Pontiac Sunbird the police were seeking at the Erwin Villa apartment complex. As appellant and his companion, Fitch, got out of said automobile, Officer Reno approached and asked for identification. While Reno was questioning the men, Officer Bob Shoquist arrived and discovered that appellant had a concealed handgun on his person (later identified as the pistol taken in the robbery). Reno then drew his service revolver on Fitch and removed a pistol Fitch was carrying and placed Fitch on the ground without handcuffs. At this time Reno responded to Shoquist's request for help as Shoquist was struggling with appellant over the pistol. Both officers struggled with the appellant and in the struggle Reno lost possesion of the pistol he had taken from Fitch. The appellant yelled, "Shoot him, shoot him," and Fitch shot Reno in the neck. During the confusion that followed, appellant escaped in a police squad car and was apprehended only after a high speed chase which terminated when the appellant crashed the squad car into a concrete median marker.

At the penalty stage of the trial the State waived the enhancement paragraphs of the

indictment alleging a prior robbery conviction and a prior burglary conviction for the purpose of enhancement of punishment. See V.T.C.A., Penal Code, § 12.42. However, the State introduced under Article 37.07, V.A.C.C.P., as part of appellant's "prior criminal record" five prior felony convictions. This evidence reflected that 39–year–old appellant had been to penal institutions on three occasions. The record reflects a federal conviction for "breaking a seal fixed to interstate shipping in violation of 18 U.S.C., Sec. 2117," a forgery conviction, a burglary conviction and two robbery convictions. These convictions were undisputed.

Examining the charge at the penalty stage of the trial, we find that subsequent to the giving of the parole law charge in question the court, near the conclusion of the charge, instructed the jury:

"You are further instructed that in determining the punishment in this case, you are not to discuss among yourselves how long the defendant will be required to serve any sentence you decide to impose. Such matters come within the exclusive jurisdiction of the Board of Pardons and Paroles and the Governor of the State of Texas and are no concern of yours."

In determination of the question posed the charge must be read as a whole.

Examining the jury argument at the penalty stage of the trial, I find no mention of parole or the parole law charge. The prosecutor did indeed ask for life imprisonment, but he carefully based that upon the facts of the offense and appellant's arrest and the appellant's five prior felony convictions.

Further, in *Almanza*, supra, at p. 174, the majority wrote:

"We hold that finding error in the court's charge to the jury beings—not ends—the inquiry; the next step is to make an evidentiary review along the lines of that described above in *Davis*, supra [28 Tex.Ct.App. 542, 13 S.W. 994, 995 (1890); writ of error dism'd 139 U.S. 651, 11 S.Ct. 675, 35 L.Ed. 300 (1891)], as well as a review of any other part of the record as a whole *which may illuminate the actual, not just theoretical harm to the accused.* (Citations omitted)" Emphasis supplied. See also *Lawrence v. State*, 700 S.W.2d 208, 212 (Tex.Cr.App. 1985) ("[b]y failing to object in the instant case, the appellant is charged with showing actual egregious harm under *Almanza.*")

In applying the *Almanza* analysis to this unobjected to portion of the charge at the penalty stage of the trial, although the charge be error, I cannot agree that the error is so egregious and created such harm that the appellant was "deprived of a fair and impartial trial." See Article 36.19, V.A.C.C.P.

While I agree the statute is unconstitutional, I do not agree that the judgment of conviction and the punishment assessed need to be reversed.

TEAGUE, Judge, concurring and dissenting.

I only join Part III of the majority opinion that is authored for the Court by Judge Clinton that declares Art. 37.07, § 4(a), V.A.C.C.P., the statutory parole law instruction statute, unconstitutional because it violates the due course of law provisions of the Texas Constitution. Also see the concurring opinion that I filed in *Andrade v. State*, 700 S.W.2d 585, 589 (Tex.Cr.App. 1985), in which I pointed out why such an instruction would probably not run afoul of the due process clause of the Federal Constitution's Fourteenth Amendment, but would perhaps run afoul of applicable Texas Constitutional provisions.

My main disagreement with the statute is as the majority opinion states, namely: "The risk that punishment will be based on [inadmissible] extraneous considerations is intolerable in a society that constitutionally demands concepts of fundamental fairness be honored in its criminal justice system." (Citations omitted.) (Page 537.) Also see the concurring opinion that I filed in *Andrade*, supra. However, given the fact that appellant did not complain in the trial court about the instruction being given to the jury, and the facts that were presented that might have enabled the jury to assess

the punishment it did, I am unable to agree with Judge Clinton's majority opinion's conclusion that the error in instructing the jury was "calculated to deny [the appellant] a fair and impartial trial on the issue of punishment." (Page 537. Footnote omitted.).

The record clearly reflects that when the trial judge made it known to the world, and the appellant and his attorney, of course, that he was going to give the jury the statutory parole law instruction that is declared by a majority of this Court today in this case to be unconstitutional, neither appellant nor his attorney complained by timely and properly objecting to the trial judge's act, nor is there any evidence in the record that might reflect or indicate that appellant did not want the jury so instructed. By their silence on the subject, I must assume that they were satisfied with the trial judge giving the instruction on the statutory law parole law instruction; otherwise, it stands to reason that they would have timely and properly complained.

When the Legislature of this State enacts a statute whose validity is highly questionable, and is facially unfavorable to the defendant, such as the parole law instruction statute that is implicated here, or, for that matter, when this Court hands down an opinion that announces a highly questionable principle of law, notwithstanding that at the moment in time when the statute or decision is invoked and applied in a criminal case it is then "good" law, I find that it is still incumbent upon the defendant or his attorney to timely and properly complain in the trial court if the defendant desires to later complain on appeal about the statute, or the principle of law announced by this Court, in the event there is an appeal. If neither the defendant nor his attorney complains in the trial court, I find that the defendant is then relegated to asserting and proving, if he can, that the above caused his trial to result in a miscarriage of justice.

It should now be unquestioned that had all attorneys of this State in the past not timely and properly complained in the trial courts of this State about questionable statutes enacted by our Legislature, or did not complain about some of this Court's questionable decisions, thus laying the predicate to later complain about the matter before the Supreme Court of the United States or in federal court, our State's criminal law would probably not have progressed very far from where it began in 1836. If you do not believe me, go and read the decisions by the Supreme Court of the United States that directly involve criminal cases from Texas, which that Court reversed, holding that what this Court said was the federal constitutional law of the land was really not that law. Those decisions, standing alone, actually make a compendium on federal constitutional law.

When a statute is enacted by the Legislature of this State, that is facially questionable, as here, I find that it is not only within the province of the parties to timely and properly question in the trial court the wisdom of what the Legislature has enacted, they actually have a legal duty to question that statute's validity in the trial court.

When a defendant appeals his conviction, and he did not complain in the trial court about what he complains on appeal, appellate courts usually hold that he waived that complaint, and will not ordinarily review it, or, if the court reviews the contention, what is stated in the opinion regarding the complaint actually amounts to nothing less than dicta or obiter dicta; lip service, if you please.

In the instance where the defendant does not complain in the trial court about the statutory mandated parole law instruction to the jury, as occurred here, before reversible error is shown to exist, it must be established that the instruction affected the fairness, integrity, or public reputation of the defendant's trial that it caused the trial to be labeled "a miscarriage of justice." In Federal courts, this is often referred to as "plain error". See Hunter, *Federal Trial Handbook 2d* (1984 edition). In Texas, before *Almanza v. State*, 686 S.W.2d 157 (Tex.Cr.App.1984), was decided by a majority of this Court, this was usually referred to in common parlance as "fundamental error", "fundamental constitu-

tional error" or "error of constitutional dimension".

I pause to point out that nowhere in *Almanza,* supra, is the subject of a *statutorily created jury instruction,* which statute is later declared to be unconstitutional by this Court, discussed, either expressly or by implication, and, because we are dealing here with a statutorily enacted jury instruction, and not a non-statutorily created jury instruction, which is now declared to be unconstitutional by this Court, *Almanza,* supra, is inapplicable to this case. This is what causes the concurring and dissenting opinions that are filed in this cause to be flawed.

Given the facts of this case, I do not believe that any rational person, much less a judge on this Court, can unequivocally state beyond a reasonable doubt that the statutorily created parole law jury instruction that was given in this cause so infected the punishment phase of appellant's trial that it caused a miscarriage of justice to occur when the jury assessed appellant's punishment at life imprisonment.

In this cause, appellant was on trial for committing the offense of aggravated robbery, a first degree felony, which carried "hard time" punishment anywhere from 5 years to 99 years' confinement in the Department of Corrections, or life imprisonment in the Department of Corrections. In this instance, the jury, in assessing appellant's punishment was not only entitled to consider the facts of the case, but was also entitled to consider the following independent criminal offenses that appellant committed: 2 theft offenses, 1 unlawfully carrying a deadly weapon offense, either 2 aggravated assault on a police officer offenses or 1 attempted capital murder of a police officer offense, and 1 felony theft of a police car. The State also established at the punishment stage of the trial that appellant had been to penal institutions three times and had five prior felony convictions which involved the State offenses of forgery, burglary, two robberies, and the federal offense of breaking a seal fixed to interstate shipping. Given these facts, and notwithstanding that punishment was limited to that provided for a first degree felony, I am unable to find that the parole law instruction so infected the punishment phase of appellant's trial that the assessment of life imprisonment by the jury was a miscarriage of justice.

Where the defendant is shown to have timely and properly complained in the trial court about the trial judge giving the jury the statutory parole law instruction, I would find that the trial judge committed trial error in giving the instruction, although at the time of the defendant's trial the giving of the parole law instruction was not error. I would then invoke and apply the principle of law provided in Rule 81(b)(2), Tex.Rules of Appellate Procedure, to that cause. That rule provides that if this Court finds that error occurred in the trial court, the trial court's judgment shall be reversed, "unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment". I would then remand the cause to the particular court of appeals from whence the case came, for that court to abate the appeal to the trial court in order for the trial judge to conduct "a harmless error hearing" so that *the State,* if it desires to do so, might be given the opportunity to establish on the record, with admissible relevant evidence, that *none* of the jurors considered the parole law instruction in assessing the punishment. Of course, because the question can only be answered by testimony from *all* of the jurors, it would be necessary for the State to have *all* of the jurors testify at the hearing, or account for their absence.

At first blush, my suggestion might appear to be contrary to the provisions of Rule 606(b), Texas Rules of Criminal Evidence. However, it is not. That rule, contrary to its federal counterpart, is facially internally self-contradictory in that the second part of the rule washes out the first part of the rule. However, because the rule only applies on its face to "inquir[ies] into the validity of a verdict or indictment", it should not control a "harmless error" type hearing, the result of which could not conceivably affect the validity of the jury's verdict, i.e., in that instance, it is not the

jury's verdict that is being attacked, it is determining what effect the erroneous parole law instruction might have had upon the jurors when they decided the defendant's punishment.

The only significant question that the jurors would be asked at the "harmless error" hearing is whether the parole law instruction had any effect on their decision to assess the punishment that was assessed. In a sense, the parole law instruction amounts to communicating to the jury external prejudicial information, or it amounts to "outside influence". Hon. Linda Addison, an attorney of this State, who is a frequent contributor of legal articles to the Texas Bar Journal, recently and correctly pointed out in her article entitled "Conduct Unbecoming a Jury: Rule 606(b)", September, 1987 *Texas Bar Journal,* that the rule permits jurors to testify if "it can be shown that an 'outside influence' was improperly brought to bear upon any juror." (872). If necessary, this Court should interpret the rule to permit interrogation of jurors where improper communication with the jury has occurred. If the internally self-contradictory Rule 606(b) can be interpreted to mean that no matter what the external prejudicial communication with the jury might have been, jurors are totally and absolutely immune from being called to testify, then, of course, it is obviously time for this Court to rewrite the rule. Once the word is out that jurors are

totally immune from being called to testify, I fear that serious jury misconduct will commence to take place, to the detriment of the State as well as the accused. Understandably, if none of the jurors in a criminal case can be questioned, then the effect, if any, the parole law instruction might have had on the jury can never be determined. The result of such a holding would mean that every single criminal conviction that has occurred in this State, where the parole law instruction was given over objection, will have to be reversed or set aside by this or some other appellate court. As a member of this Court, as well as a private citizen of this State, I, for one, am not ready to vote to give the internally self-contradictory Rule 606(b) that interpretation.

Therefore, I only join part III of of the opinion that Judge Clinton authors for a majority of this Court, in which the statutory parole law instruction statute is declared unconstitutional. I respectfully dissent to the holding that the original error that was committed by the Legislature, which was carried into execution by the trial judge, was, standing alone, "calculated to deny [the appellant] a fair and impartial trial on the issue of punishment." I would hold, instead, that given the circumstances and facts of this case, the error was not such that it caused a miscarriage of justice, and would affirm the judgment of the court of appeals, which affirmed the trial court's judgment of conviction.[1]

---

1. Given what is in the majority opinion for the Court, I am able to fully comprehend what the first part of the last sentence in the penultimate paragraph states, "Therefore, we hold that Article 37.07, Section 4(a), along with the instruction it mandates, violates Article I, Section 19." However, given what is *not* stated in the opinion, I am at a total loss, as I am sure appellate judges, trial judges, prosecutors, defense attorneys, and defendants will be, what the last part of the sentence, which states "and is calculated to deny right of an accused to a fair and impartial trial on the issue of punishment", (footnote omitted), means or is supposed to mean. A majority of this Court in *Almanza v. State,* 686 S.W.2d 157 (Tex.Cr.App.1985), approved the following statement, to-wit: "On the other hand, if no proper objection was made at trial and the accused must claim that the error was 'fundamental', he will obtain a reversal only if the error is so egregious and created such harm that he 'has not had a fair and impartial trial'—in short 'egregious harm' ". (171). Well, what

could be more "egregious harm" than error in a charge that is "calculated to deny right of an accused to a fair and impartial trial on the issues of punishment." Although a majority of the Dallas Court of Appeals found Article 37.07, Section 4(a), V.A.C.C.P., constitutional, which holding this Court disagrees with, it also found, for reasons stated, that the statutory instruction was not so egregious as to deny appellant a fair and impartial trial by jury on the issue of punishment. Is the majority opinion for this Court saying that, in my words, although the statute is unconstitutional, and the statutory instruction was so egregious that it was calculated to deny appellant a fair and impartial trial on the issue of punishment, notwithstanding this, it did not deny him a fair and impartial trial on the issue of punishment? Isn't this slightly contradictory? Given the fact that under *Almanza,* supra, the error in giving the charge was egregious, it would appear that the error was automatic reversible error. Plain error, if you please. I dissent

McCORMICK, Judge, dissenting on appellant's petition for discretionary review.

A *Rose* by any other name is a justly convicted appellant walking the streets of Texas with other guilty felons who will be released from the consequences of their convictions as a result of this decision. Today, the result oriented majority has produced a false flower of fairness camouflaged in the pseudonym of justice.

There is so much wrong with the majority opinion that to dissent in full would require the writing of at least a two volume treatise entitled "Judicial Legislation: A Means to an End." Ignoring a constitutional amendment approved by the people of the State of Texas, the majority, without logic, rationale or conscience, strikes down a statute which passes judicial muster in every jurisdiction that has addressed comparable law. Perceiving that the jury charge complained of here catches the appellant in an unconstitutional Tinker to Evers to Chance [1] double play, the majority of "independent" umpires calls foul.

One need only read the first paragraph of the majority opinion to recognize the quicksand upon which the decision rests:

"Based solely on the Constitution and laws of the State of Texas, we will find such an instruction, as well as the man-

dating statute, is unconstitutional." *Rose*, p. 531.

To avoid later review by our United States Supreme Court, the majority attempts to solidify its due process conclusions on State grounds and thus deprive the people of the State of Texas of their due course of law. Yet, to reach the due course of law issue the majority cites decisions of this Court which rely entirely on United States Supreme Court cases: *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); *Gardner v. Florida*, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977); *Presnell v. Georgia*, 439 U.S. 14, 99 S.Ct. 235, 58 L.Ed.2d 207 (1978); and *Cole v. State of Arkansas*, 333 U.S. 196, 68 S.Ct. 514, 92 L.Ed. 644 (1948), or cases which are clearly distinguishable from the facts presented here.

In footnote 9 of his opinion, Judge Clinton makes a passing reference to the landmark decision of *Almanza v. State*, 686 S.W.2d 157 (Tex.Cr.App.1985) (On Rehearing) noting that merely because the parole law instruction was given, reversal is mandated. Judge Clinton seems to have forgotten a valuable contribution that he made to Texas jurisprudence through the case of Almanza.[2]

because at a minimum, given what the majority opinion holds, the cause should be remanded to the court of appeals for it to reconsider the matter in light of this court's declaration that the statute is unconstitutional. When the cause was originally before the court of appeals, that court viewed the statute in light of the presumption that the statute was constitutional. This Court's declaration, of course, has changed that perception, and the matter should now be viewed by the court of appeals in line with this Court's holding that the statute is unconstitutional. However, as I have previously pointed out, in light of the circumstances and facts of this cause, the error did not cause the punishment that was assessed to be labeled "a miscarriage of justice." Is a majority of this Court implicitly adopting the reasons that the majority of the Dallas Court of Appeals gave as to why the statutory charge error did not deny and deprive appellant of a fair trial on the issue of what punishment should have been assessed by the jury? As to the remarks by the individual justices on the court of appeals and this Court,

which discuss why the unobjected to or not complained about statutory charge error was not reversible error, although perhaps hopefully persuasive, these are not the words of this Court or the Dallas Court of Appeals. They are only the words of the individual members of the respective courts. I honestly believe that the members of the bench and bar of this State will be at a loss as to how this Court's majority opinion should be received. To tell the bench and bar of this State that the statute is unconstitutional but not to tell them how this holding should be applied to a particular case in the future is almost to tell them nothing.

1. In 1946, Joe Tinker (SS), Johnny Evers (2B), and Frank Chance (1B) were elected to the National Baseball Hall of Fame in Cooperstown, New York. Today's majority opinion will undoubtedly replace "*Almanza* the Terrible" in Judge Teague's "Hall of Fame" of bad opinions.

2. At the time he wrote *Almanza*, Judge Clinton wrote broadly, holding that all "fundamental error" in the court's charge must be reviewed

As we all know *Almanza* was the precedent-setting decision handed down by this Court which set out the sole standards to be used in reviewing both preserved error and unpreserved error in the court's charge to the jury. Since the issue before the Court concerns an instruction to the jury—specifically, the parole law instruction mandated by Article 37.07, Section 4, V.A.C.C. P.,—review must be had by the standards enunciated in *Almanza*.

"If the error in the charge was the subject of a timely objection in the trial court, then reversal is required if the error is 'calculated to injure the rights of the defendant,' which means no more than there must be *some* harm to the accused from the error. In other words, an error which has been properly preserved by objection will call for reversal as long as the error is not harmless.

"On the other hand, if no proper objection was made at trial and the accused must claim that the error was 'fundamental,' he will obtain reversal only if the error is so egregious and created such harm that he 'has not had a fair and impartial trial'—in short 'egregious harm.'

pursuant to the tests set out in *Almanza*. Recently however, apparently having undergone a change of heart, Judge Clinton has hedged on that premise, particularly in his dissent in *Lawrence v. State,* 700 S.W.2d 208 (Tex.Cr.App. 1985), where he wrote:

"In *Cobarrubio* [*v. State,* 675 S.W.2d 749 (Tex. Cr.App.1983) ] we said that 'this error precipitated *a denial of due process of law in the most FUNDAMENTAL sense,*' id., at 752. Thus, '*Cobarrubio* error' is constitutional error, just as recognized in headnote 1 and by opinion in several decisions collected under it in Texas Digest. So did all judges more than two years ago in *Jenkins v. State,* [740 S.W.2d 435] No. 64,004, delivered February 16, 1983, but still pending on rehearing. In this very cause, as well as *Cobarrubio,* the Austin Court of Appeals relied on three decisions by the Supreme Court of the United States to underscore its own determination that fundamental error of constitutional dimension was presented by the State. The strength of that assessment by the Court in *Cobarrubio* is not weakened by the mere fact that it was made in the context of an objection to the charge.

"Though '*Cobarrubio* error' not preserved for appellate review 'would have necessitated automatic reversal' under one group of decisions

"In both situations the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." 686 S.W.2d at 171.

"We hold that finding error in the court's charge to the jury begins—not ends—the inquiry; the next step is to make an evidentiary review ... as well as a review of any other part of the record as a whole which may illuminate the actual, not just theoretical, harm to the accused. See also *Woods v. State,* 653 S.W.2d 1 (Tex.Cr.App.1983) adopting dissenting opinion in *Hill v. State,* 640 S.W.2d 879 (Tex.Cr.App.1982); *Robinson v. State,* 596 S.W.2d 130 (Tex.Cr.App. 1980); and *Sattiewhite v. State,* 600 S.W. 2d 277 (Tex.Cr.App.1980).

"To the extent that it holds any charge error requires 'automatic' reversal, *Cumbie v. State,* 578 S.W.2d 732 (Tex.Cr.App. 1979) is overruled, as are all other opinions inconsistent herewith." 686 S.W.2d at 174.

classified in *Cumbie* [*v. State,* 578 S.W.2d 732 (Tex.Cr.App.1979) ] as fit and proper for appellate consideration and reversal, it does not follow that '*Cobarrubio* error' *qua* error is no longer 'a denial of due process in the most fundamental sense,' id., at 753. Overruling *Cumbie* did not serve to change the nature and character of an error....

"... [*Almanza*] overrules *Cumbie* only '[t]o the extent that it holds any charge error requires "automatic" reversal,' *Almanza,* at 174; we did not purport to say errors catalogued in *Cumbie* are no longer 'reversible.' Indeed, our remand to the Fort Worth Court of Appeals was 'to make such examination in light of considerations expressed in *part II* of this opinion,' ibid.

"Let it be clearly understood that an egregious error must first be found before an appellate court takes the next step 'to make an evidentiary review along the lines of that described in *Davis'* [*v. State,* 28 Tex.Ct.App. 542, 13 S.W.2d 994 (1890) ] and to review any other pertinent part of the record for actual harm. But obviously there are some errors so egregious that such a review will not save them. Nowhere in *Almanza* did we say, 'This Court no longer recognizes per se reversible jury charge error,' as intimated in the majority opinion." 700 S.W.2d at 217–218. (emphasis in original)

See also *Thomas v. State*, 723 S.W.2d 696 (Tex.Cr.App.1986); *Teague v. State*, 703 S.W.2d 199 (Tex.Cr.App.1986).

Under this Court's holding in *Almanza*, a determination of whether fundamental error exists in a jury charge requires a case-by-case analysis. *Lawrence v. State* 700 S.W.2d 208 (Tex.Cr.App.1985). No longer may this Court or any court of appeals announce a per se rule of reversal for any specific error in the charge—such as the application of an unconstitutional statute in a jury charge. Thus the majority is in error in its initial approach to the analysis of the case.

With that premise in mind, I now make a correct analysis of the instant case, using the two step analysis espoused by Judge Clinton in *Almanza*.

### I.

The first step necessary to an *Almanza* analysis is a determination of whether there was error in the jury charge. As will be seen, infra, not only is the majority incorrect in holding the statute and jury charge unconstitutional, there is not even any error. The majority determines unconstitutionality on two grounds. First, that such a jury charge unconstitutionally violates the separation of powers provision of Art. III, Sec. 1, TEX. CONST., and, secondly, is unconstitutional as a violation of the Due Course of Law clauses of Art. I, Secs. 13 and 19, TEX. CONST. In its zealousness to get quickly to the matter of reversing this conviction, the majority carefully ignores *any* discussion regarding the rules of statutory construction where constitutionality is the issue. And for good reason —the established and well-settled law dictates against the conclusions of the result-oriented majority.

Under both federal due process considerations and our own State law, the determination of the constitutionality of a statute begins with the presumption that a statute is constitutional. *Goldblatt v. Town of Hempstead*, 369 U.S. 590, 82 S.Ct. 987, 8 L.Ed.2d 130 (1962); *Ex parte Granviel*, 561 S.W.2d 503 (Tex.Cr.App.1978). Likewise in both the federal and Texas jurisdictions,

courts should seek to interpret statutes such that their constitutionality is supported. *United States v. National Dairy Products, Inc.*, 372 U.S. 29, 83 S.Ct. 594, 9 L.Ed.2d 561 (1962); *Faulk v. State*, 608 S.W.2d 625 (Tex.Cr.App.1980); *Ex parte Granviel*, supra. And the wisdom of a legislative act is within the legislative prerogative, not within the wisdom of this, or any other court. *Smith v. Davis*, 426 S.W. 2d 827 (Tex.1968).

The fact that opinions may differ as to the constitutionality of a statute should not be a sufficient basis to strike down the legislation. Instead, it should militate in favor of constitutionality, unless it is so apparent that reasonable minds could not differ. Under the rules of statutory construction, before a court declares a statute unconstitutional, some deference should be paid to decisions of other courts which have construed the same provisions. Yet today, the majority ignores the interpretation of every court of appeals of this State which has considered the issue. See *Torres v. State*, 725 S.W.2d 380 (Tex.App.—Amarillo 1987); *Garcia v. State*, 725 S.W.2d 385 (Tex.App.—Amarillo 1987); *Mathews v. State*, 725 S.W.2d 491 (Tex.App.—Corpus Christi 1987); *Colter v. State*, 724 S.W.2d 925 (Tex.App.—Austin 1987); *Alvarado v. State*, 723 S.W.2d 318 (Tex.App.—Austin 1987); *Rose v. State*, 724 S.W.2d 832 (Tex. App.—Dallas 1986); *Boudreaux v. State*, 723 S.W.2d 230 (Tex.App.—Beaumont 1986); *Joslin v. State*, 722 S.W.2d 725 (Tex. App.—Dallas 1986); *Casares v. State*, 712 S.W.2d 818 (Tex.App.—Houston [1st Dist.] 1986); *Patton v. State*, 717 S.W.2d 772 (Tex.App.—Fort Worth 1986); *Zaragosa v. State*, 721 S.W.2d 429 (Tex.App.—Corpus Christi 1986); *Hardy v. State*, 722 S.W.2d 164 (Tex.App.—Houston [14th Dist.] 1986); *Ruiz v. State*, 726 S.W.2d 587 (Tex.App.— Houston [14th Dist.] 1987); *Gaines v. State*, 723 S.W.2d 302 (Tex.App.—San Antonio 1987); *Garcia v. State*, 725 S.W.2d 385 (Tex.App.—Amarillo 1987); *Smith v. State*, 727 S.W.2d 344 (Tex.App.—Houston [1st Dist.] 1987); *Aranda v. State*, 723 S.W.2d 788 (Tex.App.—El Paso 1987); *Clark v. State*, 721 S.W.2d 424 (Tex.App.— Houston [1st Dist.] 1986); *McGowan v.*

*State*, 729 S.W.2d 316 (Tex.App.—Dallas 1987); *Carter v. State*, 727 S.W.2d 108 (Tex.App.—Fort Worth 1987); *Salazar v. State*, No. 02–86–00059–CR (Tex.App.—Fort Worth, March 12, 1987); *Winton v. State*, 727 S.W.2d 687 (Tex.App.—Texarkana 1987); *Sanders v. State*, 727 S.W.2d 674 (Tex.App. —Texarkana 1987); *Flores v. State*, 727 S.W.2d 691 (Tex.App.—San Antonio 1987); *Foy v. State*, 726 S.W.2d 263 (Tex.App.— Waco 1987); *Miller v. State*, 723 S.W.2d 789 (Tex.App.—Dallas 1987); *Hernandez v. State*, 730 S.W.2d 35 (Tex.App.—Corpus Christi 1987); and many more too numerous to list further.

Without judicial logic or controlling precedent, the majority tells the justices of the courts of appeals they were in the wrong ballpark, and reverse their judgments without a rational explanation to them of why their opinions were out of the strike zone. Our learned brethren on the courts of appeals deserve more. The majority fails even to explore the possibilities that the statute is valid, thus ignoring all rules of statutory construction.

### A. *Separation of Powers*

Relying primarily on the historical view that parole was an executive function, the majority concludes that the 1983 amendment to Art. IV, Sec. 11, TEX. CONST. did not alter the position of the Board of Pardons and Paroles as an agency of "constitutional status in the Executive Department," and, despite such amendment "remains where it has always been—in the Executive Department." Such conclusion is nothing more than the "opinion" of the result-oriented majority and maliciously ignores the *facts!*

As noted in the majority opinion, the 1936 amendment to Art. IV, Sec. 11, was in response to guberntorial abuse of the clemency power. The creation of the Board of Pardons and Paroles as a constitutional body was designed "to limit the clemency powers of the Governor by providing that in all criminal cases except treason and

3. File, Legislative Reference Library, S.J.R. 13, Acts 1983, 68th Leg., and accompanying file

impeachment, after conviction, 'on the written signed recommendation and advice of the Board of Pardons and Paroles, or a majority thereof, to grant reprieves and commutations of punishment and pardons.'" Commentary, Art. IV, Sec. 11, TEX. CONST.

It was, like in 1936, gubernatorial abuse that led to the 1983 amendment. Legislative disgust with the governor's increased failure to follow parole recommendations of the Board of Pardons and Paroles prompted the proposed amendment to remove parole entirely from the Governors clemency powers.[3] Today, no mention is made in the Texas Constitution relative to the executive branch having *any* function or authority relative to paroles. The majority implies that since the constitutional authority for the Board of Pardons and Paroles remains in Art. IV, TEX. CONST., the agency is therefore an executive agency. Hogwash! It still appears there because that is the article and section which required amendment to remove parole from the executive branch—a concommitant *limitation* on the executive branch.

In confusing Art. IV, Sec. 11, TEX. CONST., and Art. II, Sec. 1, TEX. CONST., together, we must pay particular attention to the latter constitutional provision. The function of Art. II, Sec. 1, is generally conceded to be to prevent the concentration of power in the hands of a single person, class or group. The provision is designed to facilitate the system of checks and balances between the three distinct branches of government and to prevent one branch from usurping the powers granted by the people to one or more of the other branches of government. See Commentary, Art. II, Sec. 1, TEX. CONST.

It must be remembered, that in determining the present case, there is a clear expression in the Constitution that the parole component of the clemency power has been removed from the Governor (Executive).

"Thus, it is not exactly correct to state the principle of separation of powers as audio recordings of hearings.

absolutely prohibiting performance by one department of acts which by their essential nature belong to another. Rather, the correct statement is that a department may constitutionally exercise any power whatever its essential nature, which has, by the Constitution, been delegated to it; but that it may exercise powers not so constitutionally granted which from their essential nature do not fall within its division of governmental functions." Commentary, Art. II, Sec. 1, TEX. CONST.

The Austin Court of Appeals has summarized the law quite succinctly:

"We believe that it is well settled that this constitutional prohibition states a principle of government and not a rigid classification as in a table of organization. This provision must be interpreted along with other constitutional provisions, and when this is done it is clear that the Constitution does three things; (1) it provides for three polar functions of government; (2) it delegates certain powers to each of the three departments in a distribution of all governmental powers; and (3) it blends legislative, executive and judicial powers in a great many cases. (Footnote omitted). The proper interpretation of Art. II, Sec. 1 is therefore dictated by its context. The proper interpretation is that this provision *prohibits a transfer of a whole mass of powers from one department to another* and it prohibits a person of one branch from exercising a power historically or inherently belonging to another department. It may not be interpreted in a way that prevents cooperation or coordination between two or more branches of government, hindering altogether any effective governmental action. *It was designed, as were other checks and balances, to prevent excess. State Board of Insurance v. Betts,* 158 Tex. 83, 308 S.W.2d 846 (1958)." *Coates v. Windham,* 613 S.W.2d 572 (Tex.Civ.App.—Austin, 1981, no writ). (Emphasis supplied)

As noted supra, and as recognized in dictum by this Court in *Sanders v. State,* 580 S.W.2d 349 (Tex.Cr.App.1979), the pa-role component of the clemency power has *historically* been vested in the executive branch of government. But this is no longer true. Today the parole function is granted to the Legislature by the Constitution and delegated by the Legislature to the Board of Pardons and Paroles.

In *Haynie v. State,* petition granted (No. 024–87, pending), the Assistant District Attorney has provided an excellent analysis of the issue. I quote extensively from the brief filed by Pamela Sullivan Berdanier:

"Insofar as the separation of powers argument was applied in *Sanders,* [supra], the opinion first quoted language taken from a footnote in the Court's earlier opinion in *Heredia v. State,* 528 S.W.2d 847 (Tex.Cr.App.1975). *Sanders,* at 351. However, when one turns to *Heredia* to examine this footnote more closely, it is clear that the *holding* of *Heredia* is that it was *proper* for the trial court to submit a charge to the jury informing them not to deliberate on how long a defendant would be required to serve in order to satisfy a sentence, because the determination to grant parole is beyond the province of the jury and the courts. Rather, parole is 'exclusively a matter within the province of the executive branch of government, under proper regulation by the legislative branch. Art. IV, Sec. 11, Texas Constitution.' *Heredia,* at 853, n. 4.

"Thus, insofar as it is applicable to the present issue, the holding of *Heredia* establishes two points which are contrary to [the majority's position]: 1) even without express statutory authorization by the Legislature, the trial court may properly charge the jury that it is not to consider the parole laws in assessing the defendant's sentence (the function, the State would submit, of the charge complained of here) and 2) that pursuant to TEX. CONST. art. IV, Sec. 11, admission of a convict to parole is a power granted to the executive branch under *proper regulation* by the legislative branch [which is no longer true in light of the 1983 constitutional amendment], which the *judiciary* may not usurp.

"Before proceeding with the analysis addressing the question of among which branches of government Art. IV, Sec. 11 and other constitutional provisions *presently* place the *parole* component of the clemency power, it is necessary to briefly digress to discuss the other opinions, *Ex parte Giles*, 502 S.W.2d 774 (Tex.Cr.App. 1974) and *State ex rel Smith v. Blackwell*, 500 S.W.2d 97 (Tex.Cr.App.1973), cited in *Sanders* for the proposition that clemency powers embodied in the parole system are beyond the reach of interference by the *judicial* branch. *Sanders*, at 580 S.W.2d 351–52. The *Smith* opinion dealt with the validity of Sec. 4.06 of the Controlled Substances Act, TEX. REV.CIV.STAT.ANN. art. 4476–15 (Vernon 1974). In 1973 the Legislature had, by adoption of Sec. 4.05 of the Controlled Substances act (sic), reduced the penalties for offenses involving marijuana (sic) below those prescribed by TEX.PENAL CODE ANN. Sec. 725b (Vernon 1925). Section 4.06 provided that any person previously convicted for marijuana-related (sic) offenses should be, upon petition to the convicting court, resentenced pursuant to the penalty provision (Sec. 4.05) of the Controlled Substances Act. *Smith*, at 102–03. The Court of Criminal Appeals held that this compelled 'resentencing' of a person already convicted and sentenced amounted to a 'commutation' of the previously imposed sentence. *Smith*, at 103–04. Because the power to *commute* sentences was given to the governor by Art. IV, Sec. 11, the court held that the legislature could not alter previously imposed sentences in this fashion, nor could it clothe the judiciary with this power. Therefore, the Court struck down Sec. 4.06 of the Controlled Substances Act.

"In *Giles*, the same approach was utilized by the Court to strike down Sec. 6.01(c) of the newly enacted Controlled Substances Act, which provides for resentencing under the provisions of the Controlled Substances Act for offenses committed prior to its effective date. With regard to Giles, who had been sentenced before the effective date of the Controlled Substances Act, the Court held, as it had in *Smith*, that Art. IV, Sec. 11 barred 'resentencing' of previously convicted defendants since it amounted to a *commutation* of a previously imposed sentence. *Giles*, at 783–786.

"Three points should be made with regard to *Smith* and *Giles:*

1) Both cases involve claims of a statutory right to a reduction of a previously imposed sentence. These changes in the sentences were not theoretical, but real and specific.

2) In both cases, the governor's power to *commute* sentences, *not* his power to *admit convicts to parole*, was found to be usurped by the legislature's enactment of the resentencing provisions contained in the Controlled Substances Act. Commutation is a greater form of clemency than conditional parole. *Ex parte Lefors*, 165 Tex.Crim. 51, 303 S.W.2d 394 (1975 [1957]).

3) *Smith* and *Giles* have absolutely nothing to do with the wording of jury charges.

"At this point, we can turn from a discussion of the prior case law to the discussion of the express provisions of TEX. CONST. art. IV, Sec. 11.

"The first paragraph of Sec. 11 gives the *legislature* the power to establish a Board of Pardons and Paroles and to require it to record and give reasons for its actions and to enact parole laws. The second paragraph of Sec. 11 deals with the *governor's* powers to grant 'reprieves, commutations of punishments and pardons' and to 'remit fines and forfeitures,' but even these powers may be exercised by the governor only with a written recommendation of the Board of Pardons and Paroles. With this grant of constitutional authority, the legislature, pursuant to TEX.CODE CRIM.PROC. ANN. art. 42.18, Sec. 1 (Vernon Sup. 1986), has designated the Board of Pardons and Paroles as 'the agency of the State government with exclusive power to determine paroles.' Pursuant to Sec. 3(d) of Art. 42.18, supra, the Board of Pardons and Paroles makes the determi-

nation of who shall be paroled under what conditions and level of supervision, and also determines the issuance of parole revocations.

"Thus, while Art. IV, Sec. 11, *at the time of its adoption* in 1876, placed the parole component of the clemency power exclusively in the hands of the *governor,* the section *as amended* clearly places *parole under the control of the legislature,* with the only limitation on the exercise of that power being that the legislature must act through the Board of Pardons and Paroles, which the legislature is left free to control (via the enactment of statutes) through its exercise of this constitutional authority.

"The fact that Art. IV, Sec. 11 is retained in that portion of the constitution which described the executive department is simply an historical accident stemming form the fact that under the language of Art. IV, Sec. 11, and adopted in 1876, the parole power, along with all other aspects of the pardoning or clemency power was placed in the hands of the governor. Clearly, the power of clemency, while traditionally held by the king or other head of state (*see* Commentary to Art. IV, Sec. 11) can be lodged in whichever branch of government the people desire. *Ex parte Miers,* 124 Tex.Crim. 592, 64 S.W.2d 778 (1934 [1933]). The 1983 amendment to Art. IV, Sec. 11, removing the governor's power to revoke paroles, was the final step in the transmission of the parole power component of the clemency power *from* the governor *to* the legislature.

"That the Constitution mandates that the legislature must delegate the administration of the parole function to a board of Pardons ad Paroles, in no way implies that the executive branch of the government retains any constitutional authority over the parole process. Likewise, the fact that the legislature has elected to delegate to the governor the power to appoint members of the Board of Pardons and Paroles, in no way diminishes its *constitutional authority* with regard to the parole power. See generally, *Ex parte Granviel,* 561 S.W.2d 503, 514 (Tex.Cr.App.1978).

.    .    .    .    .

"Because the parole power component of the clemency power is solely the constitutional province of the legislature, it has decreed that the courts shall give jurors the instructions mandated by Art. 37.07, Sec. 4, supra. Such instructions are designed to prevent jurors from considering parole when assessing punishment." State's brief, pp. 7–12. (footnotes omitted) (material in brackets added)

### B. *Due Course of Law*

The majority also concludes that Article 37.07, Sec. 4(a) violates the due course of law provisions of Art. I, Secs. 13 and 19 in that it denies an accused of his right to a fair and impartial trial on the issue of punishment. This conclusion rests on the premise that the jury instruction impose "[t]he risk that punishment will be based on extraneous considerations ..." because "often jurors cannot resist the temptation to discuss parole laws." In other words, the majority presumes that a jury will disregard their instructions that they "are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant," and "are not to consider the manner in which the parole law may be applied to this particular defendant."

In *Keady v. State,* 687 S.W.2d 757 (Tex. Cr.App.1985), the author of today's majority opinion, while writing in dissent, suggested a pattern jury charge to explain to jurors why parole matters should not be considered:

"Further you are instructed that the determination to grant parole, if and when made, rests on many facts and events not now known, for the simple reason that they have not yet occurred at time of trial. Since it cannot be predicted at this time when or even whether parole will be granted, you are not to mention, refer to, discuss or consider how long the defendant might be required to remain confined to serve the

punishment you assess and the sentence the court will impose. Such matters come within the exclusive jurisdiction to be exercised at some time in the future by the Board of Pardons and Paroles, and to some extent by the governor of this State, and they are beyond the province of courts and, therefore of the jury as well." *Keady,* supra, at 762 (Clinton, J., dissenting).

And in the same dissenting opinion, Judge Clinton states:

> "Let us accept that jurors are reasonable and sensible persons who can be trusted to follow their oath and instructions from the trial court *when they are made to understand the reason they are not to discuss parole." Keady,* supra, at 762. (Emphasis in original).

The majority today finds offensive a jury instruction taken in part almost verbatim from Judge Clinton's opinion in *Keady,* supra, and strikes it down because jurors can no longer be trusted to follow their instructions.

Not only has the majority had a change of heart about the trustworthiness of jurors, they today express a change of heart as to the interpretation of the due course of law provisions of our own Texas Constitution. It has long been settled law in Texas that the due course of law provisions of Art. I, Sec. 19, TEX. CONST. were meant to be construed in the same way as the Fourteenth Amendment of the United States Constitution. *Mellinger v. City of Houston* 68 Tex. 37, 3 S.W. 249 (1887). And the cases the majority relies on to support such conclusions rely on the Fourteenth Amendment or cases based thereon, e.g., *Webb v. State,* 161 Tex.Cr.R. 442, 278 S.W.2d 158 (1955), relies on *Lisenba v. People of California,* 314 U.S. 219, 62 S.Ct. 280, 86 L.Ed. 166 (1941).

Until today, the constitutional due process issue presented would have been quickly disposed of by merely citing *California v. Ramos,* 463 U.S. 992, 103 S.Ct. 3446, 77 L.Ed.2d 1171 (1983). There, the same due process argument made in the instant case was rejected by the Supreme Court as not violative of federal due process.

## II.

Clearly, the majority errs on both bases upon which Art. 37.07, Sec. 4(b) is today declared unconstitutional, and no error exists in giving the instruction. Even if it is error, I concur with Judge Onion that *Almanza* should be applied and there is no egregious harm in this case.

For all of the above reasons, I dissent.

W.C. DAVIS and WHITE, JJ., join this dissent.

## OPINION ON COURT'S OWN MOTION FOR REHEARING

CAMPBELL, Judge.

### I.

We are rehearing this case on the Court's own motion.[1] This rehearing is for the purpose of reexamining the correctness of our holding that Article 37.07, § 4(a) V.A.C.C.P. is unconstitutional. A majority now holds that the statute is unconstitutional because it violates the separation of powers and the due course of law provisions of the Texas Constitution.[2]

### II.

At trial, appellant did not object to the jury charge mandated by Art. 37.07, § 4(a). We hold that such a failure to object does not, in the context of the in-

---

1. Tex.R.App.Pro. 2(b). The motions for rehearing filed by the District Attorney, State Prosecuting Attorney and appellant are hereby overruled.

2. Those judges joining this portion of the opinion ascribe to the conclusions expressed by Judge Clinton, in our original opinion, that Article 37.07, § 4(a) violates the separation of powers provision, Article II, § 1, and the due course

stant case, waive appellant's ground for review.[3]  We will now explain this holding.

A majority of this Court recently declared Article 32A.02, V.A.C.C.P. [hereinafter: Speedy Trial Act], unconstitutional and void in its entirety. *Meshell v. State,* 739 S.W.2d 246 (Tex.Cr.App.1987) (rehearing denied November 4, 1987).  The holding in *Meshell* announced that by enacting the Speedy Trial Act the Legislature had violated the separation of powers doctrine under Article II, § 1 of the Texas Constitution. We recently held that an unconstitutional statute is void from its inception and cannot provide a basis for any right or relief. *Jefferson v. State,* 751 S.W.2d 502 (Tex.Cr. App. No. 0327–85 delivered May 11, 1988).[4] See also 12 Tex.Jur.3d, *Constitutional Law,* § 41, at 548 (and cases in n. 33 thereof).

Like the Speedy Trial Act, we have declared Art. 37.07, § 4(a) unconstitutional for, *inter alia,* violation of the separation of powers doctrine.  One of the effects of holding the Speedy Trial Act void was to relieve litigants from objecting at trial or raising the issue on direct appeal.  *Jefferson,* supra.  By analogy, in the instant case, appellant is also relieved of the obligation of objecting at trial.  See also *Reyes v. State,* 753 S.W.2d 382 (Tex.Cr.App.1988).

### III.

■ Having decided that appellant has not waived his claim through failure to object, we will next determine the correct standard of harm analysis to be applied to this case.  Initially, we will examine whether the standard in *Almanza,* supra, or

some other standard of harm should be applied to the instant case.

Generally, appellate review of error in criminal cases is conducted in a two-step process.  The first step is to determine what, if any, error occurred in the trial. The second step requires us to evaluate the error in order to determine whether it calls for reversal of the conviction.  Our opinion on original submission held that Article 37.07, § 4(a) was passed in contravention of the Texas Constitution's due course and separation of powers provisions.  Thus, our harmless error analysis will be based on whether the error of applying a constitutionally infirm statute to a defendant is reversible.  This type of "statutory" error should be distinguished from charging error as envisioned by Article 36.19 V.A.C.C. P. and *Almanza,* supra.  Article 36.19, and thus *Almanza,* is invoked upon a violation of any of Articles 36.14 through 36.18 V.A. C.C.P.  Our original opinion did not hold, nor have any of the parties alleged, that the charge in the instant case presents a violation of any of these statutory provisions.

Tex.R.App.Pro. 81(b)(2) provides the general harmless error test to be applied by appellate courts in criminal cases.

> If the appellate record in a criminal case reveals error in the proceedings below, the appellate court shall reverse the judgment under review, unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment.

Tex.R.App.Pro. 81(b)(2).  This rule has been applied in a variety of contexts,[5] and litigants have relied upon the benefits of the statute until declaration of its invalidity.  *Lone Star Motor Import, Inc. v. Citroen Cars Corp.,* 288 F.2d 69 (5th Cir.1961); *Stevenson v. State,* 751 S.W.2d 508 (Tex.Cr.App.1988) (Miller, J. concurring and Duncan, J. dissenting).  See also 12 Tex.Jur.3d, *Constitutional Law,* § 41, at 548 (and cases in nn. 34–35 thereof).

of law provision, Article I, §§ 13 and 19, of the Texas Constitution.

**3.** We note here that the lead opinion on original submission did not address appellant's failure to object to the challenged parole instruction. Those judges who would have applied *Almanza v. State,* 686 S.W.2d 157 (Tex.Cr.App.1985), addressed the issue tacitly through *Almanza*'s two-tiered analysis.

**4.** Although not before us in the present case, we think it wise to point out that this general rule is subject to exception where a judgment has been rendered under an unconstitutional statute and

**5.** *Murphy v. State,* (Tex.Cr.App. No. 102–86 delivered April 6, 1988) (Motion for rehearing pending) (evidence of extraneous bad acts); *Stahl v. State,* 749 S.W.2d 826 (Tex.Cr.App.1988) (improper jury argument); *Bennett v. State,* 742 S.W.2d 664

it has been specifically applied to the denial of state and federal constitutional rights. *Erwin v. State*, 729 S.W.2d 709 (Tex.Cr. App.1987) (compulsory process for defendant). Because there is no countervailing procedural rule or statutory provision, the harm analysis codified in Rule 81(b)(2) is applicable to the error in this case.

### IV.

▬▬▬▬ Applying the harm analysis of Rule 81(b)(2) to the facts of this case, appellant was convicted of aggravated robbery and assessed the maximum sentence, life in the Texas Department of Corrections. We are unable to know what process the jury underwent in assessing punishment; however, the record in this case presents factors which indicate that the error was harmless.

After reading the statutory parole instruction, the trial judge also read the jury the following instruction:

> You are further instructed that in determining the punishment in this case, you are not to discuss among yourselves how long the defendant will be required to serve any sentence you decide to impose. Such matters come within the exclusive jurisdiction of the Board of Pardons and Paroles and the Governor of the State of Texas and are no concern of yours.

We generally presume, although the presumption is rebuttable, that a jury follows the instructions given by the trial judge, in the manner presented. *Cobarrubio v. State*, 675 S.W.2d 749, 752 (Tex.Cr.App. 1983). See also, in the context of instructions to disregard, *Nichols v. State*, 754 S.W.2d 185, 199 (Tex.Cr.App.1988); *Gardner v. State*, 730 S.W.2d 675, 696 (Tex.Cr. App.) *cert. denied*, —— U.S. ——, 108 S.Ct. 248, 98 L.Ed.2d 206 (1987). Here, in addition to the statutory instruction not to use information concerning parole in assessing this particular appellant's punishment, the trial judge flatly told the jury [under the old law] that parole was not their concern.

(Tex.Cr.App.1987) (appointment of psychiatrist to examine defendant solely for the purpose of

This is particularly significant because this was the judge's last word on the subject.

In addition to the curative instruction, the facts of the offense militate in favor of a harsh sentence. Appellant and two other men robbed a man, in his office, at gun point. The three threatened to kill the victim and left him bound on the floor. The robbers took $160 and the victim's pistol. Eight days later, Ennis police officers stopped appellant and his companion, Fitch. In a pat-down search, the officers discovered that each of the two men was carrying a pistol. At this point, officer Reno drew his gun and pointed it at Fitch in order to disarm him. Appellant began to struggle with the other officer, Shoquist, for possession of the other gun. When Reno called Shoquist for help with appellant, Shoquist joined the struggle. In the meantime, Shoquist lost possession of the gun taken from Fitch. Appellant yelled, "Shoot him, shoot him," and Fitch shot Reno in the neck. During the confusion arising from the shooting, appellant escaped in a police squad car. Appellant was apprehended after a high speed chase which ended when he crashed the car into a concrete median.

Compounding these facts surrounding the offense and subsequent arrest was appellant's criminal record. During the punishment phase of appellant's trial, the State waived the indictment's two enhancement paragraphs. Pursuant to Art. 37.07 § 3 V.A.C.C.P., the State introduced appellant's five prior felony convictions. Appellant had been convicted of breaking a seal fixed to interstate shipping (18 U.S.C. § 2117), forgery, burglary, and, on two occasions, robbery. These convictions most certainly, in addition to the facts of the instant offense, contributed to the jury's assessment of punishment.

The presumption that the jury followed the trial judge's final instruction to totally disregard parole, coupled with the particularly heinous facts of this case and appellant's prior criminal record, lead us to the conclusion that the statutory parole in-

determining future dangerousness.

struction did not affect appellant's sentence. Thus, we find beyond a reasonable doubt that the error made no contribution to the punishment assessed. Tex.R.App. Pro. 81(b)(2).

Accordingly, the judgment of the Dallas Court of Appeals is affirmed.

W.C. DAVIS, J., concurs in result.

CLINTON, J., dissents to Part IV.

ONION, Presiding Judge, concurring.

I concur in the result reached, but clearly not in most of the reasoning used in the opinion on the court's own motion for rehearing. The error here is charge error, not some other kind of error.

TEAGUE, Judge, concurring to majority opinion on Court's own motion for rehearing.

So there will be no questions about where I stand on the issues addressed by this Court, in the "Court's Own Motion for Rehearing" opinion, and this Court's holdings, I file this concurring opinion.

I am still unable to conclude, as a matter of Federal Constitutional law, that the statute authorizing the parole law instruction is unconstitutional because it denies appellant due process of law. See the concurring opinion that I filed in *Andrade v. State*, 700 S.W.2d 585, 589 (Tex.Cr.App. 1985). As to the majority opinion's holding that the parole law statute violates Art. II, § 1, of the Texas Constitution, the separation of powers clause, see "Part I" of the majority opinion, but for stare decisis ("To abide by, or adhere to, decided cases"), *Black's Law Dictionary* 1261 (1979 edition), and this Court's erroneously reasoned and decided decision of *Meshell v. State*, 739 S.W.2d 246 (Tex.Cr.App.1987), I would not join that part of Part I of the majority opinion which holds the statute unconstitutional for that reason. However, until *Meshell*, supra, is expressly overruled by this Court, it must be followed. Otherwise, stare decisis be damned. Therefore, I am compelled by my oath of office to adhere to *Meshell*, supra, which supports the majority opinion's holding that the parole law

statute is unconstitutional because it violates the separation of powers clause of the Texas Constitution. Given the opportunity, I will, of course, vote in a New York minute to expressly overrule all of *Meshell*, supra, and dispatch it far beyond Davey Jones' footlocker. Therefore, I am constrained to join all of Part I of the majority opinion.

I join Part II of the majority opinion that holds that appellant, by failing to object in the trial court, did not waive his right to challenge on appeal the constitutionality of the parole law statute. I do so without any equivocation. It is the well established law in this state that a court will always adjudicate whether a statute is unconstitutional when its unconstitutionality is obvious and apparent, even when the issue is not raised in the trial court or on appeal. See the cases collated under *West's* Constitutional Law Key 46(2). Thus, given the fact that the unconstitutionality of the statute authorizing the parole law instruction is obvious and apparent, the statute was subject to attack by appellant at any time.

Given the fact that the majority opinion has adopted in principle what I stated in the concurring and dissenting opinion that I filed on original submission, that because we are dealing with statutory charge error, and the statute has been declared unconstitutional, and not dealing with mere judicial charge error, what this Court stated and held in *Almanza v. State*, 686 S.W.2d 157 (Tex.Cr.App.1985), which only dealt with judicial charge error, is inapplicable to this cause, and given the further fact that my legal views have not changed, plus the fact that the majority does not see fit to solicit the views of the jurors in this cause as to what effect, if any, the parole law instruction might have had on them when they voted to assess appellant's punishment at life imprisonment, I join Part III of the majority opinion, that holds that Rule 81(b)(2), *Rules of Appellate Procedure*, which provides us with the general harmless error test, is the one that should be used by this Court in this case in order to make the determination whether, beyond a reasonable doubt, the charge error made no

contribution either to appellant's conviction or to the punishment that was assessed.

I emphasize that I am forced to decide whether the error was harmless pursuant to Rule 81(b)(2) because the majority opinion refuses to mention or discuss Rule 606(b) of the *Rules of Criminal Evidence.* Perhaps Rule 606(b) is not mentioned or discussed in the majority opinion because those members of this Court who join Part IV of the majority opinion do not want to be told that in approving Rule 606(b) the members of this Court, who did not have the benefit of any public hearings on the rule, failed to comprehend that the Rule amounts to no rule because the second half of the Rule clearly "x's out" the first half of the Rule, thus resulting in the fact that there is now no rule that forbids petit jurors to testify to the validity of their punishment verdict.

The first half of Rule 606(b) provides: (b) Inquiry into validity of verdict or indictment. Upon an inquiry into the validity of a verdict or indictment, a [grand juror or petit] juror may not testify as to any matter or statement occurring during the course of the jury's deliberations [as to the indictment or the jury's verdict of guilt or punishment] or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith.

The second half of the Rule, however, provides the following:

[E]xcept that a juror may testify as to any matter relevant to the validity of the verdict or indictment.

Given the above, the last sentence of the Rule, "Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes", appears to me to closely remember what I would characterize as a "dangling participle sentence". In deciding what importance the last sentence might have, when one "x's out" the first half of the Rule with the second half of the Rule, I will, of course, defer to those persons who like to diagram sentences and give them the opportunity to diagram all of the sentences found in Rule 606(b), and will not undertake that chore. In any event, given the wording of the Rule, excluding the last sentence, it is clear to me that it was the apparent intent of those members of this Court who voted for the rule that the second half of the rule would "x out" the first half of the Rule, leaving the last sentence standing alone. Thus, the last sentence becomes Rule 606(b), and it, standing alone, can obviously only give meaning to Rule 606(a).

On page 532, the majority opinion states: "We are unable to know what process the jury underwent in assessing punishment ..." If the jurors can tell us, how come we are unable to know? To clearly decide the issue, all one must do is ask the jurors whether, in assessing appellant's punishment at life imprisonment, they considered the now declared unconstitutional parole law instruction. Rule 606(b), as it should be read, is certainly no legal impediment to asking the jurors a question that goes to the validity of their verdict on punishment, and the validity of their verdict on punishment is most certainly raised in this cause.

Therefore, if I had my druthers, I would remand this cause to the court of appeals so that this cause could be abated to the trial court so that the trial judge could conduct a "harmless error" type hearing on what effect, if any, the parole law instruction might have had on the jurors when they voted to assess appellant's punishment at life imprisonment. Of course, at the hearing the State would have the burden to establish, if it could, that *none* of the jurors considered the parole law instruction when they voted to assess appellant's punishment at life imprisonment, i.e., that the instruction made no contribution to the punishment that was assessed. Also at the hearing, it would be the State's burden to summon *all* of the jurors to testify at the hearing, or show cause why those who were absent were either dead or so disabled that they could not attend the hearing and it would not be feasible to move

the courtroom to where they are totally incapacitated. It would further be incumbent upon the State at the hearing to establish through those jurors who were able to testify that the parole law instruction was not considered or used by any of the jurors in their decision to assess appellant's punishment at life imprisonment, i.e., it made no contribution the punishment that was assessed.

Because the majority of this Court is unwilling to have the only persons who know the answer, the jurors in this cause, respond, I am thus relegated to my ever present court made crystal ball to make the determination whether the charge error was harmful or harmless to appellant. Therefore, viewing the matter through my crystal ball, and in the abstract from my perch on the Court of Criminal Appeals, in light of the facts of this cause, I unequivocally state that there is not a reasonable possibility that any rational jury would have returned any other verdict that the one that the jury in this cause did: life imprisonment.

I conclude this opinion with a note of alarm. The members of this Court are now witnessing some appellant's petitions for discretionary review that assert that like charge error as here was harmful to the appellant, and that such made some contribution to the punishment that was assessed, with some opinions of the courts of appeals merely blowing the appellants off without making any kind of harm analysis, and merely citing the original opinion of this Court that was handed down on original submission as its authority. Sad to say, this Court is merely refusing those petitions for discretionary review. This, however, is not true of all of the courts of appeals that have been confronted with the harmless error issue because many of our courts of appeals have done a correct harmless error analysis in overruling the asserted charge error contention. Hopefully, today's majority opinion will change what has been occurring in some cases. I caution the members of the court of appeals that merely because this Court has in the past refused petitions for discretionary review, where the court of appeals did not make a harm analysis, that this should not be taken to mean that this Court will at all times in the future continue to refuse like petitions for discretionary review. Therefore, I strongly suggest to the members of the courts of appeals that any time the issue is presented the members of the court of appeals make a careful harmless error analysis. Whether the error will or will not constitute harmful error will, of course, as here, be dependent upon the peculiar facts of the case. The facts here that went to punishment would easily warrant any rational trier of fact to assess appellant's punishment at life imprisonment. As far as harmless error goes, I have viewed that issue from the standpoint of the facts that went to the assessment of life imprisonment. I caution the members of the courts of appeals: When it comes to deciding whether the error was harmless, not all cases are going to nicely fit the facts of this case.

Therefore, I respectfully concur and dissent.

DUNCAN, Judge, concurring on Court's motion for rehearing.

On original submission I joined only that portion of Judge Clinton's opinion that declared the parole instruction mandated by Art. 37.07, § 4(a) V.A.C.C.P., unconstitutional because it violated the due course of law provision of the Texas Constitution. I also concluded that since submission of the jury instruction was violative of a defendant's right to due course of law it necessarily followed that a harm analysis as envisioned by *Almanza v. State*, 686 S.W.2d 157 (Tex.Cr.App.1985) was inappropriate. I continue to adhere to my position that *Almanza v. State, id.*, is inapplicable, but I do agree with Judge Campbell's position that a harm analysis as required by Rule 81(b)(2) Tex.R.App.Proc. is applicable.

I now also agree with Judge Clinton's observations that Art. 37.07, § 4(a), V.A.C.C.P., is an unconstitutional legislative intrusion upon the separation of powers doctrine. Therefore, I join completely the opinion of Judge Campbell.

Nevertheless, I feel it is necessary to make these additional comments concerning the legislative activity that resulted in Art. 37.07, § 4(a), *supra.* It is no secret that Art. 37.07, *supra* was enacted to pacify a perceived public concern that defendants were being released prematurely from prison. Whether that is a valid thesis is irrelevant. What is relevant, however, is that there was a viable way to respond to the public's arguable concern.

Assuming that the concern was real and action by the Legislature was necessary, there was a means of doing so without imposing upon the executive and judicial branches of Texas government. Very simply, rather than rely upon the speculation that Art. 37.07, *supra*, encourages, if the Legislature concluded that prisoners are being released too early all they have to do is alter the standards under which the parole laws are administered. Why the Legislature elected to proceed in the faulty manner that resulted in Art. 37.07, *supra*, as opposed to confronting the matter in a direct and constitutional way is not readily apparent.

Courts are properly hesitant to declare legislative actions unconstitutional. But when a legislative body acts in a manner that unaccountably usurps the authority and responsibility of another branch of government it is the right and duty of this Court to declare such actions unconstitutional. Art. 37.07, *supra* was not only an unconstitutional legislative effort, but unnecessary as well.

MILLER, J., joins.

McCORMICK, Judge, dissenting, on Court's motion for rehearing.

Two basic issues have been ignored by this Court: first, and foremost, is appellant's standing to raise claims of separation of powers violations; and second is this Court's finding that appellant's right to due course of law has been abrogated yet finding such abrogation "harmless."

## STANDING TO RAISE SEPARATION OF POWERS VIOLATION

One of the most fundamental tenets of appellate law, apparently overlooked by the majority, is the requirement that a party have standing to raise an issue before an appellate court. When challenging the constitutionality of a statute, it is incumbent upon the party raising the issue to show that in its operation, the statute is unconstitutional as to him in his situation; that it may conceivably be applied unconstitutionally to others is not sufficient. *Parent v. State*, 621 S.W.2d 796, 797 (Tex.Cr.App. 1981), and cases cited therein. To establish standing, the party must show that he is injured, or that his rights are abrogated in the application of the alleged unconstitutional statute. *Tileston v. Ullman*, 318 U.S. 44, 63 S.Ct. 493, 87 L.Ed. 603 (1943).

Thus, in *Meshell v. State*, 739 S.W.2d 246 (Tex.Cr.App.1987), before *any* discussion was had as to separation of powers, this Court properly determined the threshold issue of the Freestone County attorney's standing to complain. There we wrote:

"... We must *first* determine whether the Freestone County attorney is entitled to protection under Article II, § 1, supra.

"The office of the county attorney, as well as district and criminal district attorney, is established in Article V, § 21, of the Texas Constitution....

"By establishing the office of county attorney under Article V, the authors of the Texas Constitution placed those officers within the Judicial department....

"* * *

"The Freestone County Attorney, *having been granted the exclusive right within the Judicial department* 'to represent the State in all cases in the District and inferior courts' *is entitled to be protected by the separation of powers doctrine* contained in Article II, § 1, supra...." *Meshell*, 739 S.W.2d at 253 (footnotes omitted and emphasis added).

Appellant is *not* a member of any branch of government and is *not* a member of the Board of Pardons and Paroles whose power is supposedly usurped by Article 37.07, Section 4, V.A.C.C.P. Appellant is vicariously asserting a separation of powers violation in contradiction to established guidelines of

constitutional law. The majority's finding a separation of powers violation *for defendant* is untenable.

### "HARMLESS" DUE COURSE OF LAW VIOLATION

The majority has found a "harmless" due course of law violation. This Court has previously determined that:

"[D]ue process is in itself essentially the same as fairness. Or at the very least, due process is the vehicle used to arrive at fairness thereby protecting our fundamental rights. Accordingly, 'a fair trial in a fair tribunal is a basic requirement of due process.' *In re Murchison,* 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942 (1955)." *Long v. State,* 742 S.W.2d 302, 320 (Tex.Cr.App.1987), *cert. denied,* — U.S. ——, 108 S.Ct. 1301, 99 L.Ed.2d 511, 43 Crim.L.Rev. 4001 (1988).

Thus, if there is a finding of a due course of law violation (and consequently a finding that the defendant's trial is *fundamentally* unfair) how can such ever be susceptible to a harmless error analysis? An unfair trial is an unfair trial, as long as the majority persists in finding a "harmless" unfair trial, by necessary implication the majority has found *no* due course of law violation. The majority's finding a harmless due course of law violation has led to an inconsistent opinion: One need only examine the majority opinion in this case and compare it to the opinion on its own motion for rehearing.

Judge Clinton, writing the majority opinion on original submission, stated:

"[I]n the fifth paragraph ... the jury is instructed: 'You *may consider* the existence of the parole law and good conduct time.' That is to say, when it comes to assess punishment the jury may deliberate on the content of what has been stated in the preceding four paragraphs [outlining the parole and good conduct time laws] in making a decision as to the number of years it will assess as punishment." Majority opinion p. 535 (footnote omitted; emphasis in original).

The *entire* majority opinion, finding both a separation of powers violation and a due course of law violation, is *inextricably hinged* upon the jury's consideration of the parole and good conduct time possibilities. Judge Campbell's opinion on the motion for rehearing, however, finds that the jury was told *not to consider* the parole law and, remarkably, the Court *presumes* that they obeyed this instruction and thus the error was harmless. In essence, the majority finds in the same opinion that the statute violates due course of law because the jury *considered* the parole laws yet such was harmless because the jury *did not consider* the parole laws.

It is to these inconsistencies that I must dissent.

WHITE, J., joins in this dissent.