**Thomas William SHEARER, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 04–86–00582–CR.

Court of Appeals of Texas,
San Antonio.

April 12, 1989.

Rehearing Denied May 9, 1989.

Richard C. Mosty, Kerrville, for appellant.

E. Bruce Curry, Dist. Atty., Kerrville, for appellee.

Before CADENA, C.J., and REEVES, CHAPA, PEEPLES, CARR, BUTTS and BIERY, JJ., en banc.

OPINION

CHAPA, Justice.

This case involves the application of article 37.07, § 4, Parole Law Instruction. Because the Texas Court of Criminal Appeals has declared article 37.07, § 4 unconstitutional in *Rose v. State*, 752 S.W.2d 529 (Tex.Crim App.1988) (on rehearing), they have directed this court to conduct a harm-

less error analysis under the guidelines of TEX.R.APP.P. 81(b)(2).

In *Rose v. State, supra,* the Court stated:

> After reading the statutory parole instruction, the trial judge also read the jury the following instruction:
>
>> You are further instructed that in determining the punishment in this case, you are not to discuss among yourselves how long the defendant will be required to serve any sentence you decide to impose. Such matters come within the exclusive jurisdiction of the Board of Pardons and Paroles and the Governor of the State of Texas and are no concern of yours.
>
> ....
>
> Here, in addition to the statutory instruction not to use information concerning parole in assessing this particular appellant's punishment, the trial judge flatly told the jury [under the old law] that parole was not their concern. This is particularly significant because this was the judge's last word on the subject.

*Rose, supra* at 554.

Thus, the Court of Criminal Appeals was referring to an instruction above and beyond the statutory instruction given in the case before us. This Court has already recognized the significance of this additional instruction in *Olivarez v. State,* 756 S.W. 2d 113, 115 (Tex.App.—San Antonio 1988, no pet.). However, although we agree that the additional instruction discussed in *Rose, supra,* and *Olivarez, supra,* is a significant factor in the application of TEX.R.APP.P. 81(b)(2), we disapprove of any suggestion that harmless error is not possible in the absence of such an additional instruction. Likewise, we reject any suggestion that the parole law instruction declared unconstitutional in *Rose, supra,* is self-curing, in that it would be inconsistent with the Court of Criminal Appeals' requirement that we review this case further under the guidelines of rule 81(b)(2). The court in *Rose, supra,* clearly intended that the reviewing court look to the entire record in the application of rule 81(b)(2). *Rose, supra,* at 554.

TEX.R.APP.P. 81(b)(2) provides:

> If the appellate record in a criminal case reveals error in the proceedings below, the appellate court shall reverse the judgment under review, unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment.

The evidence presented to the jury revealed that:

1) the State used David Hill as an informant during the transaction in question;

2) at the time, David Hill was facing a motion to revoke probation for other charges and was obviously interested in cooperating in making other arrests to help himself;

3) David Hill, an old acquaintance of appellant, cooperated with the authorities in bringing about appellant's conviction;

4) the amount of marijuana appellant was found guilty of delivering was 4.31 ounces;

5) the State's motion to revoke David Hill's probation was dismissed by the State after Hill's involvement in this transaction; and

6) appellant had no previous convictions on his record. The record of the trial further reflects that:

1) the prosecutor made the following statement during argument on the sentence:

> ... It's obvious now that the Defendant has been convicted, that he is certainly willing to accept these terms of probation. Think again, look at the entire case and the circumstances. The third page deals with the parole laws, and it's very easy to understand I believe. If you read this, the last paragraph on that page talks about the fact that you may consider the existence of the parole law and good conduct time. It talks about one-third of the sentence imposed ...;

and

2) the trial court's charge on punishment only gave the statutory parole law instructions without any additional precautions as in *Rose, supra.*

Although appellant failed to object to the parole law instruction, he has now been relieved of the obligation of objecting at trial in order to preserve this error. *Rose, supra,* at 553.

The punishment for the crime involved here ranges from confinement for not less than 2 years nor more than 20 years, plus a fine of not more than $10,000. The prosecutor requested punishment be no less than 15 years and one day. The jury, after the court refused to answer their inquiry as to why the State wanted the additional day over and above the 15 years, assessed punishment at 15 years.

Referring to the trial court's additional curative final instruction, the Texas Court of Criminal Appeals in *Rose, supra,* found that the parole law instruction beyond a reasonable doubt made no contribution to the punishment stating:

> ... [T]he presumption that the jury followed the trial judge's final instruction to totally disregard parole, coupled with the particularly heinous facts of this case and appellant's prior criminal record, lead us to the conclusion that the statutory parole instruction did not affect appellant's sentence....

*Rose, supra,* at 554. Although the court found these "factors which indicate that the error was harmless," they intimate that in applying rule 81(b)(2), the reviewing court should look to the entire record. *Rose, supra,* at 554.

We find no similarity between *Rose, supra,* and the case before us. The court's charge here does not contain the additional final curative instruction found in *Rose, supra,* the facts of this case are far from being heinous, the appellant does not have a record, and the prosecutor's remarks, which the record shows were heeded by the jury, added to the prejudice already suffered by the appellant as a result of the unconstitutional instruction. We therefore cannot find beyond a reasonable doubt that the unconstitutional charge made no contribution to the 15 year sentence in this case.

The judgment is reversed and the cause is remanded for further proceeding in accordance with TEX.CODE CRIM.PROC. ANN. art. 44.29(b) (Vernon Supp.1989).

PEEPLES, J., concurs in result.

CARR, Justice concurring.

I concur with the majority opinion.

The majority opinion observes that this Court has previously recognized the significance of the additional instruction given in *Rose v. State,* 752 S.W.2d 529 (Tex.Crim. App.1988). I write to point out the significance.

The instruction mandated by TEX.CODE CRIM.PROC.ANN. art. 37.37, § 4(a) (Vernon Supp.1989) and given in the instant case states:

> Under the law applicable in this case, the Defendant, if sentenced to a term of imprisonment, may earn time off the sentence imposed through the award of good conduct time. Prison authorities may award good conduct time to a prisoner who exhibits good behavior, diligence in carrying out prison work assignment, and attempts at rehabilitation. If a prisoner engages in misconduct, prison authorities may also take away all or part of any good conduct time earned by the prisoner.
>
> It is also possible that the length of time for which the Defendant will be imprisoned might be reduced by the award of parole.
>
> Under the law applicable in this case, if the Defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served equals one-third of the sentence imposed or 20 years, whichever is less, without consideration of any good conduct time he may earn. If the Defendant is sentenced to a term of less than six years, he must serve at least two years before he is eligible for parole. Eligibility for parole does not guarantee that parole will be granted.
>
> It cannot accurately be predicted how the parole law and good conduct time might be applied to this Defendant if he is sentenced to a term of imprisonment, because the application of these laws will

depend on decisions made by prison and parole authorities.

You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular Defendant. You are not to consider the manner in which the parole law may be applied to this particular Defendant.

In *Olivarez v. State*, 756 S.W.2d 113 (Tex.App.—San Antonio 1988, no pet.), this Court held that the statutory instruction alone is not curative. *Id.* at 114–15. On the contrary, we held that the statutory instruction results in the rebuttable presumption that the jury considered the existence of parole law and good conduct time. *Id.* at 114. Experience teaches the likelihood they will is great. *Rose v. State*, *supra* at 536. Our holding in *Olivarez v. State* has not been overruled by this Court *en banc*, nor has it been declared an incorrect statement of law by the Court of Criminal Appeals.

In *Rose v. State*, the trial court further instructed the jury to totally disregard parole, and the trial court flatly told the jury that parole was not their concern. *Rose v. State, supra* at 532, 533. The Court of Criminal Appeals presumed that the jury followed the instructions to completely disregard parole. *Id.* at 554. This rebuttable presumption was supported by the heinous facts and the defendant's criminal record. *Id.* at 554. Therefore, the curative instruction to totally disregard parole was the prime reason for the affirmance by the Court of Criminal Appeals. *Olivarez v. State, supra* at 114.

Once this Court finds error, we must reverse unless we can determine beyond a reasonable doubt that the error made *no* contribution to the conviction or, as in the instant case, punishment. TEX.R.APP.P. 81(b)(2). If neither appellant nor the State shows beyond a reasonable doubt that the error made no contribution to conviction or punishment, we should reverse. It logically follows that the burden is on the State to avoid reversal by showing beyond a reason-

able doubt that the error in fact did not contribute to the results of the trial.

Here, the punishment assessed by the jury was fifteen years, being thirteen years above the minimum and only five years below the maximum allowed.

Based on the presumption, absent a curative instruction, that the jury considered the existence of parole and good conduct time as explained in the first three paragraphs of the pertinent instruction, and assessment of punishment at thirteen years above the minimum, I agree that it cannot be determined beyond a reasonable doubt that the error made no contribution to the punishment.

BUTTS, Justice, dissenting.

The question in this case on remand concerns TEX.CODE CRIM.PROC.ANN. art. 37.07, § 4(a) (Vernon Supp.1989). The parole law jury instruction was declared unconstitutional in *Rose v. State*, 752 S.W.2d 529 (Tex.Crim.App.1988). Deeming the unconstitutional statute to be void *ab initio*, the court determined that an objection to the submission of the instruction is not required to preserve error on appeal. The statute's unconstitutionality rests on two grounds: denial of due process and violation of the separation of powers doctrine. Since the error is present in this case on appeal, the mandated standard of review for this appellate court is set out in TEX.R. APP.P. 81(b)(2):

> If the appellate record in a criminal case reveals error in the proceedings below, the appellate court shall reverse the judgment under review, unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment.

The conviction in the present case is for *delivery* (not possession) of marihuana (more than four ounces). The jury was instructed that the range of punishment was imprisonment for a term of not more than twenty years nor less than two years and a fine not to exceed $10,000.00. In addition, the jury received instructions on probation with the terms set out within the

jury charge. Punishment was assessed at fifteen years' imprisonment but no fine.

The facts show that appellant was a 46 year-old man who was living with his girl-friend, Tammy Ford. She was employed at an ice house-bar. An acquaintance of theirs (the informant) accompanied an undercover agent, who was an investigator of the Texas Department of Public Safety, to the ice house to negotiate a marihuana purchase. When appellant testified, he indicated he happened to be present in the place but did not participate in the actual discussion of the arrangement to buy. He said he did not hear the conversation.

A short while later the informant and the undercover agent waited for the delivery (sale) on a little used road leading to Luckenbach. Appellant arrived driving Ford's van. The agent testified that another man accompanied appellant but he did not see Ford at all. After ascertaining who the persons were, appellant went back to the van and retrieved a paper bag. He handed it to the agent, who paid appellant the sum of $200.00 for it. Appellant represented to the agent that the marihuana was "real good."

The agent testified that he asked the informant where he could contact "the marihuana source" and "that's where he took me" (the ice house). He said he instructed the informant, "If the person had something, you know, marihuana for sale, then to come back or make a deal and come back and talk to me." The agent waited in the car outside the ice house for the informant to make the deal.

Appellant testified that the marihuana in this case was kept in the living room of the mobile home where he and Ford lived. He said that it came from Austin where he and Ford obtained it. He stated he could not recall the name of the individual from whom they got it. He indicated it was for their personal use.

The jury learned that the motion to revoke the informant's probation (D.W.I.) had been dismissed earlier. They learned that the informant had helped to cause two criminal charges to be filed, including the present case. They heard appellant testify that he did not set up the present delivery deal, that Ford did, and that he merely accommodated her by giving the paper bag of marihuana to the agent. The jury could consider all these facts and circumstances in arriving at their decision. In jury argument they were further cautioned by both the prosecutor and defense counsel to consider the facts and circumstances brought out in the guilt/innocence phase of the trial. The defense counsel said:

... I find some fault in perhaps the difference in consideration afforded [the informant] and that we're working on here today. But that's not something the law enforcement officers did at that time, but I think it's something you need to think about in punishment. How did this deal come down? Who set it up? Who negotiated it? Why did it ever come into making? The Defendant's no doubt guilty. But those are the facts and circumstances you should consider ...

Defense counsel reminded the jury that the informant had been convicted of possession of marihuana and D.W.I. and had his pending motion to revoke probation dismissed. Defense counsel directed his argument to the granting of probation for appellant.

At one point in jury argument the prosecutor said:

It's obvious now that the defendant has been convicted, that he is certainly willing to accept these terms of probation. There again, look at the entire case and the circumstances. The third page [of the charge] deals with the parole laws, and it's very easy to understand I believe. If you read this, the last paragraph on that page talks about the fact that you may consider the existence of the parole law and good conduct time. It talks about one-third of the sentence imposed. [The argument continued outlining each paragraph and page and the verdict forms. There was no further mention of parole law.]

The statutory curative instructions as to parole laws given to the jury were:

It cannot accurately be predicted how the parole law and good conduct time might

be applied to this Defendant if he is sentenced to a term of imprisonment, because the application of these laws will depend on decisions made by prison and parole authorities.

You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular Defendant. You are not to consider the manner in which the parole law may be applied to this particular Defendant.

Certain factors in each case may be considered to determine whether the error in giving the parole law jury instruction was harmless error. The *Rose* opinion suggests these: whether curative instructions were given to the jury; whether the facts of the case militate in favor of the sentence imposed, and whether the appellant has a criminal record. In this case appellant had no criminal record. It is also plain that *Rose* does not set a rigid and limited test to determine harmless error. In this case the jury was charged extensively on the law of probation, and the defense centered its evidence and main argument on this possible punishment. The prosecutor asked for "fifteen years and one day."

Each case will be examined on a case-by-case basis. When we consider the statutory cautionary instructions which we must presume the jury followed, the admonition by both the prosecutor and defense to consider the facts and circumstances of this case, the evidence of the delivery of the contraband, and the possible range of punishment (20 years), we should conclude that the statutory parole law instruction did not affect appellant's sentence. We therefore should find beyond a reasonable doubt that the error in the trial court's instruction to the jury on the parole law did not contribute to the punishment in this case.

The judgment should be affirmed. I respectfully dissent.

BIERY, Justice concurring in dissenting opinion.

The practical effect of TEX.R.APP.P. 81(b)(2) is that each appellate justice must look at the facts and circumstances of each particular case and to come to her or his own personal conclusion, beyond a reasonable doubt, that the conviction or punishment would have been the same even if the error had been deleted. Reasonable minds obviously will differ in applying this rather amorphous standard. Each decision maker will bring his or her own life experiences to the process.

In this case, a Gillespie County jury heard all of the evidence of the delivery of drugs as set forth fully and completely by Justices Chapa and Butts. Given that evidence and all of the facts and circumstances, I can say, beyond a reasonable doubt, that the jury would have given the same punishment even if the erroneous parole instruction had been deleted.