**Robert S. HUGILL, Appellant,**

v.

**The STATE of Texas, Appellee.**

Nos. C14–86–543–CR, A14–86–547–CR, B14–86–548–CR, C14–86–549–CR and A14–86–550–CR.

Court of Appeals of Texas, Houston (14th Dist.).

March 1, 1990.

Discretionary Review Refused
May 30, 1990.

**456**

Robert C. Bennett, Houston, for appellant.

Jean Spradling, Timothy G. Taft, Houston, for appellee.

Before JUNELL, SEARS and DRAUGHN, JJ.

## OPINION ON REMAND

SEARS, Justice.

Appellant entered a plea of not guilty before a jury to five counts of securing execution of a document by deception. TEX.PENAL CODE ANN. § 32.46. He was convicted of all five counts, and sentenced to imprisonment for three years for each count, the sentences to run concurrently.

On original submission before this court, appellant raised a single point of error, asserting that submission of an instruction to the jury on the law of parole, pursuant to TEX.CODE CRIM.PROC.ANN. art. 37.07, § 4, violates the constitutional separation of powers, thereby mandating reversal. In an unpublished opinion we overruled appellant's sole point of error and affirmed the judgment of the trial court. *Hugill v. State*, Nos. C14-86-543-CR, C14-86-547-CR through A14-86-550-CR, 1987 WL 5877 (Tex.App.—Houston [14th Dist.] January 29, 1987).

The appeal is before us on remand from the Court of Criminal Appeals so that we may reconsider appellant's sole point of error in light of *Rose v. State*, 752 S.W.2d 529 (Tex.Crim.App.1988) (opinion on Court's own motion for rehearing). The Court of Criminal Appeals held the challenged instruction to be an unconstitutional violation of the separation of powers. 752 S.W.2d at 552. Therefore, the trial court's instruction was error. In determining whether reversible error occurred, it remains for us to conduct a harmless error analysis pursuant to TEX.R.APP.P. 81(b)(2). 752 S.W.2d at 554. We must reverse the judgment of the trial court unless we conclude beyond a reasonable doubt that the giving of the charge made no contribution to either appellant's conviction or punishment.

■ The Court of Criminal Appeals recently outlined salient factors to be addressed in applying Rule 81(b)(2) to *Rose* error, while cautioning that the list is not exhaustive, that not all factors are applicable in every case, and that they are not to be evaluated in a mechanical way. *Arnold v. State*, 786 S.W.2d 295 (Tex.Crim.App. 1990). Among the factors to be considered are: (1) whether any mention of parole was made during voir dire. *Arnold*, at 301–02; (2) whether any objection was made to the inclusion of the parole law instruction in the jury charge. *Arnold*, at 301–02; (3) whether the operation of the parole law was discussed in the argument of counsel. *Arnold*, at 302–04; (4) the presence or absence of jury notes raising questions about

parole. *Arnold,* at 304–06; and (5) the term of years finally assessed by the jury. *Arnold,* at 306–07. In addition, there are other factors not seen as often, which include: (6) whether a deadly weapon finding was made. *Arnold,* at 307–08; (7) whether the jury rejected a proper application for probation. *Arnold,* at 307–08; and (8) whether disparate sentences are meted out when a defendant is found guilty of two or more violent offenses involving multiple victims and the jury assesses various punishments. *Arnold,* at 308–10.

Other factors, set out in *Rose,* which should be given some consideration are (9) whether a "curative" instruction was given; (10) the facts of the case—i.e., whether the heinousness of the crime militates in favor of the punishment assessed; and (11) the prior criminal record of the defendant. While the Court of Criminal Appeals suggested in *Arnold* the factors set out in *Rose* retain their validity, it outlined a more extensive list of factors and cautioned against too heavy a reliance on any of them. In his concurring opinion in *Arnold,* Judge Campbell said the factors set out in the majority opinion are not intended as a "laundry list." Instead, they should be used in conducting an inquiry as to whether the giving of the parole charge produced a different result than the jury would have reached if the error had not occurred. *Arnold* (concurring opinion), at 325. The underlying purpose of the exercise is to provide the appellate court an opportunity to determine whether the giving of the parole charge influenced the verdict on punishment. The judgment of the trial court will only be affirmed when we can conclude beyond a reasonable doubt it made no contribution to the punishment assessed. *Arnold,* at 313.

 Applying the principles gleaned from *Rose* and *Arnold* to the instant appeal, we find there is no record of the voir dire. When asked whether he had any objection to the proposed charge containing the erroneous parole law instruction, appellant said, "we have no objection." Although an objection was not necessary to preserve error, as the *Arnold* court pointed

out, the overruling of a legitimate objection would be an invitation for counsel to compound the error. *Arnold,* at 301–02.

No mention of the parole law instruction was made by either the prosecutor or defense counsel either at the guilt-innocence stage or at punishment. The instruction contained only the standard art. 37.07, § 4, admonition to the jury that it was "not to consider the manner in which the parole law may be applied to this particular defendant." No special "curative" instruction, as in *Rose,* was administered to the jury.

During the jury's deliberations, there were three notes sent out of the jury room, one during the deliberations on guilt-innocence and two while punishment was being decided. During its deliberations on guilt-innocence, the jury asked to see a chart of the names and addresses of appellant's victims. The court answered that the chart had not been admitted into evidence.

During the punishment deliberations, the jury's first note asked the court if appellant were assessed a fine, how would he pay it, and if he said he did not have the money to pay what would happen. The court answered by telling the jury the method of payment of a fine is within the discretion of the court.

The jury's second and final note during its punishment deliberations asked "who gets the [fine] money?" The court responded by telling the jury it could not answer the question. No reference was made in any of the jury notes to the operation of the parole law. While not serving as a foolproof indicator that the jury did not consider the effect of the parole law on the sentence appellant would serve, the jury notes at least leave the impression that the jury's attention was elsewhere.

The term assessed by the jury was three years. The case involved the repeated commission of the same crime with five different victims. The offenses were third degree felonies, each carrying a punishment of two to ten years. Appellant was eligible for, and applied for probation, but his application for probation was rejected by the jury. The crimes involved were not violent offenses, so the portions of *Arnold*

dealing with the making of a deadly weapon finding and disparate sentences for multiple violent offenses do not apply.

Appellant did not have a prior criminal record. Turning to the facts of the offenses, while trying to avoid the type of subjective analysis characterized by the court in *Arnold* as "faulty," (at 323–24), we note the following:

Appellant argues that the facts surrounding the offenses do not militate in favor of the punishments assessed by the jury, primarily because these were not violent crimes. Essentially, the jury found appellant guilty of running a "scam." In the depressed Houston economy of 1984–1985, appellant engaged in the practice of inducing beleaguered homeowners into signing warranty deeds conveying their homes to companies operated by appellant, representing that he would keep up the mortgage payments. In several cases, appellant represented that he would assume loans which were actually unassumable. In others, he induced the homeowners to sign their property over to a company appellant operated which had already filed for bankruptcy protection. In none of the cases did appellant ever make any of the mortgage payments which were due. Instead, appellant moved renters into the houses and collected rent on them until foreclosure occurred.

By his actions, appellant clouded the titles to the properties involved. One or more of the victims testified that appellant's activities ruined their credit standing. The jury could certainly conclude that, while appellant's crimes did not involve violence to his victims, he was nevertheless a parasite who preyed on people in vulnerable situations with the intention of deluding them into believing that he would provide assistance to them. While such crimes are not heinous in a violent sense, the jury could well conclude that they constituted harmful, reprehensible conduct worthy of harsh punishment in that they involved appellant's taking advantage of others' misfortune.

Appellant also argues that he had never previously been convicted of a felony. While that is true, in the instant prosecution he was found guilty of the repeated commission of the same crime over a period of time, using several different guises. This places him in a quite different posture from an offender with a single conviction who has never previously been convicted of a felony offense.

The entire argument of counsel on both sides at the punishment stage centered around the question of whether appellant should be granted probation. Defense counsel argued that appellant was a 51-year-old man with spina bifida, with no prior criminal record, who was a good candidate for probation. The State requested a term of years, stressing that what was involved was the repeated commission of an offense, and that these were not victimless crimes.

The punishment assessed by the jury, three years' imprisonment, is at the lower end of the scale for the range of punishment available. The gist of appellant's argument seems to be that he is in some way entitled to probation and that any sentence more severe than probation demonstrates that the jury considered the operation of the parole law in assessing punishment.

■ We reject this contention. There is no entitlement to probation. Whether or not to recommend probation is a determination left to the "unbridled discretion" of the jury. *Murphy v. State*, 777 S.W.2d 44, 65 (Tex.Crim.App.1989) (opinion on State's motion for rehearing). In the instant case, the jury obviously sought to punish appellant by assessing a sentence involving incarceration. It did so by meting out to appellant a sentence only one year more than the minimum.

Appellant points out that the punishment is "evenly divisible by three," apparently asking the court to apply the "one-third rule" fashioned by the First Court of Appeals in *Wheatly v. State*, 764 S.W.2d 271, 273 (Tex.App.—Houston [1st Dist.] 1988, no pet.). The Court of Criminal Appeals, however, in *Arnold*, rejected any such "bright line" rule. *Arnold*, at 306. While we must be sensitive to anything which indicates the jury took the operation of the

parole law into its consideration in assessing punishment, the fact that appellant was assessed a term divisible by three means nothing, absent some additional indicator that the jury took into account the effect of the parole law.

We refuse to engage in speculation. Neither *Rose* nor *Arnold* suggest that we should. Having thoroughly reviewed the record, we find no evidence that the jury took the existence of the parole law into account in determining appellant's guilt or in assessing his punishment. Therefore, we find beyond a reasonable doubt that the error in instructing the jury pursuant to TEX.CODE CRIM.PROC.ANN. art. 37.07, § 4, made no contribution to appellant's conviction, nor to the punishment assessed. TEX. R.APP.P. 81(b)(2). We overrule appellant's sole point of error.

Accordingly, we affirm the judgment of the trial court.