Jon Edward SATO, Appellant,

v.

The STATE of Texas, Appellee.

No. 421–89.

Court of Criminal Appeals of Texas, En Banc.

Oct. 10, 1990.

**38**

Lawrence B. Mitchell, on appeal only, Dallas, for appellant.

John Vance, Dist. Atty. and Pamela Sullivan Berdanier, Asst. Dist. Atty., Dallas, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

### W.C. DAVIS, Judge.

Appellant was convicted by a jury of the offense of aggravated robbery. The jury assessed punishment at twenty years confinement in the Texas Department of Corrections and a fine of $1,000. The conviction was affirmed in an unpublished opinion. *Sato v. State*, No. 05–86–00766–CR (Tex.App.—Dallas, delivered June 23, 1987). We remanded this case to the Court of Appeals for reconsideration of appellant's ground of error concerning the "parole law" instruction of Art. 37.07 § 4, V.A. C.C.P., in light of our decision in *Rose v. State*, 752 S.W.2d 529 (Tex.Cr.App.1988). The conviction was again affirmed in an unpublished opinion. *Sato v. State*, No. 05–86–00766–CR (Tex.App.—Dallas, delivered February 7, 1989). We granted review to determine whether the Court of Appeals correctly determined the inclusion of the parole law instruction in the trial court's charge on punishment was harmless beyond a reasonable doubt. We will affirm.

■ Recently, in *Arnold v. State*, 786 S.W.2d 295 (Tex.Cr.App.1990), we listed a number of factors which should be considered in determining whether *"Rose error"* was harmless: discussion during voir dire, argument of counsel, notes from the jury, sentence assessed, deadly weapon finding, facts of the case, previous convictions, "curative" instructions, and objections to the charge. Although not exhaustive, we will refer to that list for guidance here and will discuss each applicable factor. We note there is no specific weight attached to each factor nor is the presence or absence of any one factor determinative.

■ The voir dire examination of the prospective jurors was not transcribed and therefore was not a factor considered by the Court of Appeals. No objection was made by appellant to the charge, no curative instruction was given, and no evidence of prior convictions was offered to the jury. The State invited the jury to consider the operation of parole when the prosecutor argued:

> You know a little about this man, but you also know about the parole laws. The Judge gave it to you and you know now that good conduct time shaves off the time this man spends in the penitentiary. You know he is eligible in one-third of the time or 20 years, whichever is less, and that's why I'm asking for 60. I could get up here and ask life, but it wouldn't do any good. 60 years is something he is going to be eligible to do in 20 years, less conduct time. I hope you understand what I'm driving at. I'm asking you to assess a 60–year verdict because this man has earned it. He has done everything to accomplish that and he has earned the right to spend the time down there....

Appellant did not object to this argument.

Although a direct argument to consider and apply the parole law will make it more likely that the parole instruction contributed to the sentence than would an oblique or passing reference, two facts minimize that possibility here. First, the argument did not have the desired effect, i.e., a sixty-year sentence. An improper argument which works is more likely to have contributed to the punishment than one which does not. Second, the prosecutor did not linger on this topic after discussing it one time. Discussion was given in the midst of a "give him the time because he earned it" argument. Stressing the parole law by argument at a strategic place, such as the beginning or end of the State's summation, will also be likely to cause more harm than a reference in the context of a different topic.

The record before us does not contain any jury notes from the punishment phase. While the presence of jury notes on parole will show the jury did at least consider parole application and will be weighed heavily as showing harm, their absence does not indicate no such consideration occurred. Therefore, the absence of jury notes is of no aid to our analysis.

The sentence here is in accord with the facts, which as disclosed by the record, reveal the following. The victim, Mr. Capps, left the keys to his car on the trunk as he went to pay for his gasoline purchase. Appellant was seen in the driver's seat having difficulty getting the car in gear. Capps ran to the car and leaped onto the hood. Appellant accelerated, causing Capps to be thrown from the hood of the car. When the victim stopped rolling, he noticed the wheels of the car cut sharply and directly toward him. The path was clear for appellant to leave the gas station without turning to aim at Capps. Appellant ran over him, breaking both the victim's legs. At the time of trial nearly five months later, Capps still suffered pain, was receiving treatment and faced the likelihood of additional medical procedures.

Appellant was apprehended nearly a month later when police responded to a burglary call. The man arrested led police to appellant who was waiting behind the wheel of the stolen car. Because police could not locate Capps in time to make an identification, appellant was released. When police did attempt to locate appellant, they learned the address he gave was false.

The penalty range for this first-degree felony is five to ninety-nine years or life in prison plus a fine of up to $10,000. We conclude the sentence assessed is in accord with these facts. We also note the sentence here is not susceptible to the "one-third rule." See *Arnold,* supra. Unlike the absence of jury notes, this may add to our analysis in some instances. The prosecutor explained to the jury how to apply the parole law when he asked the jury for a sentence of sixty years so that appellant would be eligible for parole in twenty years. That the twenty-year sentence actually assessed is not evenly divisible by three is indicative that the "one-third" argument made by the prosecutor did not play a part in the jury's deliberations.

Based on all the factors in this case, we conclude the Court of Appeals correctly determined the erroneous charge made no contribution to the punishment. Therefore, the judgment is affirmed.

TEAGUE, J., dissents.

McCORMICK, P.J., concurs in the result.

CLINTON, Judge, dissenting.

We granted review to determine whether the Court of Appeals correctly concluded that the parole law instruction, given under Art. 37.07, sec. 4(a), V.A.C.C.P., beyond a reasonable doubt made no contribution to the punishment. I would reverse.

The Court of Appeals observed that the prosecutor mentioned the parole instructions during jury argument in the punishment phase, and the court noted that the jury rejected the State's request for a sixty-year sentence. On this basis, the court concluded beyond a reasonable doubt that the parole law instruction made no contribution to the punishment.

The Court of Appeals set out the following facts:

The evidence during the guilt/innocence phase of the trial reflected that the victim had stopped in a self-service gas station and filled up his car with gas, [and] left the keys on the trunk of the car while going inside to pay. While the victim was inside, appellant got in the car and began driving away. The victim saw him driving off and attempted to stop him by jumping on the hood. Appellant sharply accelerated the car, causing the victim to slide off onto [the] driveway. Appellant then veered the car causing it to run over the victim, breaking both his legs, and escaped. Appellant was later arrested in possession of the vehicle.

In *Arnold v. State,* 784 S.W.2d 372 (Tex. Cr.App.1990), this Court discussed factors that are relevant to punishment and to the

determination of the likelihood that the constitutionally infirm parole law instruction infected the jury's assessment of punishment. Each case, of course, must be analyzed individually in light of the relevant factors discussed in *Arnold* and the burden placed on the State as the beneficiary of the error to show beyond a reasonable doubt that the error did not contribute to the punishment. *Id.* at 375, 388.

In the instant case neither party adduced any evidence on punishment; thus no prior criminal record was shown. The charge, to which appellant did not object, contained a § 4(a) instruction; it did not include a *Rose* "curative instruction." See *Rose v. State*, 752 S.W.2d 529, at 554 (Tex.Cr.App.1987–1988). Only the lead prosecutor argued, and her remarks cover just some two and a half pages of the statement of facts. We summarize and quote them in the margin, bracketing the portion isolated by the court of appeals.[1]

It was not error for the State to argue the law of parole to the jury, but the argument was "one made in terms tending to induce consideration of the eligibility formula and other teachings of a § 4 instruc-tion [that] compounds *Rose* error and may influence the jury in its deliberation on punishment." *Arnold*, 784 S.W.2d at 379.

The Court of Appeals affirmed appellant's case based on the jury's assessment of a sentence lower than that asked for by the prosecutor. Certainly the jury rejected the State's argument for a sixty-year sentence. It does not necessarily follow that the jury also rejected the State's argument inducing consideration of parole law and good conduct time. The prosecutor's argument pointedly told the jury the State was asking for sixty years because appellant "is eligible in one-third of the time or 20 years, whichever is less." The tenor of her entire argument supports an inference that the jury did indeed consider the parole law is assessing punishment. *Arnold*, n. 26, at 390. While the jury did not accept the recommendation of the prosecutor, neither did it assess a minimum term of years. Given to understand how the parole law would affect any punishment assessed against appellant, that the jury settled on twenty years comports with experience. See *Arnold*, at 383.[2] Thus the term as-

---

1. At the outset the prosecutor told the jury she had "five minutes to tell you a few things about punishment that I didn't tell you in voir dire." First of all, she said, *"You can consider several things* when you are back there deciding what you are going to assess this man," and with slight elaboration mentioned "deterrence, punishment for the sake of [punishment], and finally, rehabilitation." She said probation was not an issue, stated the range of punishment, and asked "right now for a 60 year verdict in this case *because you are able to know several things."*

"You get to know about the victim and what he went through. * * * * "

"You know about this man. You know the attitude he has. You know his emotional state. [You know a little bit about the man, *but you also know about the parole laws.* The judge gave it to you and you know now that *good conduct time shaves off the time this man spends in the penitentiary.* You know he is eligible in one-third of the time or 20 years, which ever is less, and *THAT is why I'm asking for 60.* I could get up here and ask for life, but it wouldn't do any good. 60 years is something he is going to be eligible to do in 20 years, *less conduct time. I hope you understand what I'm driving at.* I'm asking you to assess a 60–year sentence because this man has earned it.] He has done everything to accomplish that and he has earned the right to spend time down there...."

Then she admonished the jury: "Do not feel sorry for this man. Please do not feel guilty for him because you didn't do the crime." She continued briefly along that line, and concluded:

"So, don't feel bad when you go back there and say, 'But, oh, it's so long.' *Please don't* think about it that way. You've got to now think about [the victim]. * * * * [Tell appellant] this is the last time in Dallas County you folks are going to let him do this...."

(All emphasis is mine throughout unless otherwise noted.)

2. An appellate court need not justify the verdict on punishment to decide whether *"Rose* error" may have contributed to punishment. But here we note the prosecutor erroneously twice told the jury that good conduct time would reduce the term of years actually assessed, see note 1, *ante.* Having attended reading of the § 4(a) instruction and presumably reading it themselves during deliberations, we may attribute to jurors knowledge that under "the law applicable in this case" this appellant could not become eligible for parole until "the actual time served equals one-third of the sentence imposed or 20 years, whichever is less, *without consideration of any good conduct time he may earn."* Tr. 22.

sessed does not indicate beyond a reasonable doubt that the error made no contribution to the verdict on punishment.

We previously noted that appellant did not object to the inclusion of the parole law instruction in the charge. The existence of an objection serves to dispel any speculative notion that defense counsel might be seeking to gain some advantage from the instruction. *Arnold*, at 379. The absence of an objection, without more, neither confirms nor disproves that possibility. Here, defense counsel presented no evidence and made no argument during the punishment phase.

The State argues that the parole law instruction made no contribution to the punishment because of the brutal facts of the case, including the deliberate nature of appellant in running over the victim, and the statutory "curative" instruction. None of these factors demonstrate harmless error in this case.

" 'Heinousness' is a slippery indicator for gauging how a jury evaluated conduct of appellant in assessing punishment. In other words, to find the facts are so aggravating that the punishment is appropriate is simply not a satisfactory conclusion." *Arnold*, at 388–389. The heinous facts of an offense cannot rule out the possibility that a jury may have taken into account the parole law instruction in assessing punishment. *Id.* (*Payne*), at 398. That a jury considers the evidence of guilt and the existence of parole and good conduct time, does not show beyond a reasonable doubt that the parole law instruction made *no* contribution to the punishment. *Id.*, at 389.

As to the State's argument about the "curative" instruction, no part of the instruction provided for in Art. 37.07, sec. 4 can be considered "curative." *Id.*, at 388.

Having evaluated the factors present in this case, we are satisfied that a rational appellate court cannot determine and declare beyond a reasonable doubt that the constitutional error in allowing the jury to consider the parole instruction made no contribution to the punishment.

MILLER and CAMPBELL, JJ., join in this opinion.

In such light, that jurors were unwilling to follow where the prosecutor sought to lead them seems to reflect an exercise of their collective judgment in assaying circumstances of the criminal conduct at issue. Whether a reviewing court agrees is purely academic.